**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTINA MARY REYNOLDS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TURNING POINT HOLDING COMPANY, LLC; TURNING POINT OF PENNSYLVANIA, LLC; TURNING POINT OF BLUE BELL, LLC; TURNING POINT OF NORTH WALES, LLC; TURNING POINT OF WARRINGTON, LLC; TURNING POINT OF BRYN MAWR, LLC; TURNING POINT OF NEWTOWN, LLC; TURNING POINT OF NEW JERSEY, LLC; TURNING POINT OF BRICK, LLC; TURNING POINT OF HOBOKEN, LLC; TURNING POINT OF HOLMDEL, LLC; TURNING POINT OF LITTLE SILVER, LLC; TURNING POINT OF LONG BRANCH, LLC; TURNING POINT OF MANALAPAN, LLC; TURNING POINT OF WESTFIELD, LLC; TURNING POINT OF CHERRY HILL, LLC; TURNING POINT OF MARLTON, LLC; TURNING POINT OF MOORESTOWN, LLC; TURNING POINT OF PRINCETON, LLC; TURNING POINT OF SEA GIRT, LLC; KIRK RUOFF; and DOE DEFENDANTS 1-10.<br><br>Defendants. | Civil Action No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christina Mary Reynolds ("Plaintiff")[1], on behalf of herself and all others

similarly situated, alleges as follows:

**INTRODUCTION**

1.      This is a class and collective action brought on behalf of "Tipped Employees"

who work or have worked at restaurants operating under the trade name Turning Point Holding

---

[1] While Plaintiff was employed by Defendants, Plaintiff went by her previous married name of "Christina Mary Bello." Since leaving Defendants' employ, Plaintiff has returned to using her maiden name of "Reynolds" again.

Company, LLC; Turning Point that are owned, operated and/or otherwise managed or controlled Defendants Turning Point Holding Company, LLC ("Turning Point Holding"), Turning Point of Pennsylvania, LLC ("Pennsylvania LLC"), Turning Point of Blue Bell, LLC ("Blue Bell LLC"), Turning Point of North Wales, LLC ("North Wales LLC"), Turning Point of Warrington, LLC ("Warrington LLC"), Turning Point of Bryn Mawr, LLC ("Bryn Mawr LLC"), Turning Point of Newtown, LLC ("Newtown LLC"), Turning Point of New Jersey, LLC ("New Jersey LLC"), Turning Point of Brick, LLC ("Brick LLC"), Turning Point of Hoboken, LLC ("Hoboken LLC"), Turning Point of Holmdel, LLC ("Holmdel LLC"), Turning Point of Little Silver, LLC ("Little Silver LLC"), Turning Point of Long Branch, LLC ("Long Branch LLC"), Turning Point of Manalapan, LLC ("Manalapan LLC"), Turning Point of Westfield, LLC ("Westfield LLC"), Turning Point of Cherry Hill, LLC ("Cherry Hill LLC"), Turning Point of Marlton, LLC ("Marlton LLC"), Turning Point of Moorestown, LLC ("Moorestown LLC"), Turning Point of Princeton, LLC ("Princeton LLC"), Turning Point of Sea Girt, LLC ("Sea Girt LLC") (collectively "Turning Point" or the "Company"),  and Kirk Ruoff ("Ruoff" and together with Turning Point, "Defendants"),  and have been subject to the unlawful practices detailed herein.

2.      As detailed below, upon information and belief, each of the Turning Point entities at issue maintain common ownership and share the same employment policies, including those relating to the compensation of Tipped Employees.

3.      As such, upon information and belief, the employment practices complained of herein applicable to all Tipped Employees employed at Turning Point, as Defendants utilized common labor policies and practices at each of their locations.  Accordingly, Defendants are responsible for the employment practices complained of herein.

4.      Turning Point is a restaurant chain that, according to the Company's website, operates five (5) restaurants in Pennsylvania (including locations in Blue Bell, Bryn Mawr, Newtown, North Wales, and Warrington), twelve restaurants in New Jersey (from North Jersey to Central New Jersey), and is opening soon its first location in Delaware.  *See* https://theturningpoint.biz/restaurant-locations/ (last visited March 10, 2019).

5.      Defendants employ individuals in a tipped capacity, namely "servers" ("waiters and "waitresses"), "bussers," and "baristas" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.  As Tipped Employees, these individuals were primarily responsible operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

6.      As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Wage Payment and Collection Law, 43 Pa. S. § 260.1, *et seq.,* ("WPCL"), and Pennsylvania common law[2] by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

7.      Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit" as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees.  The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

---

[2] The PMWA, WPCL, and Pennsylvania common law are collectively referred to herein as the "PA State Laws."

8.     In addition, Defendants violated the PMWA and WPCL when they required Plaintiff and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the day (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work).  This is in contravention of applicable Pennsylvania state law.

9.     Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes but is not limited to, cleaning the restaurant, cut lemons, cleaning the monitors, run the coffee pots thru with cleaning solutions (and then run thru with just water), polish silverware, and setting up/breaking down prep stations.  Notably, much of this work was performed either before or after the restaurant opened/closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

10.    Despite performing this unrelated non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

11.    Finally, as set forth below, Plaintiff and other Tipped Employees were denied wages due and owing to them due to Defendants' practice of requiring Tipped Employees to work "off the clock" ("OTC") when for periods of their shift when those employees were at or above forty hours for the week.  This OTC work necessarily meant that these employees were undercompensated for their hours worked.

12.    As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

13.    Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

14.    Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

15.    In addition, Plaintiff also brings this suit on behalf of the following similarly situated persons for unpaid overtime wages pursuant to the FLSA:

> All current and former Tipped Employees who have worked in excess of forty hours in one or more work weeks for Defendants in the United States within the statutory period covered by this Complaint who were not compensated for all hours worked and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective OT Class").

16.    Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to the PA State Laws.

17.    Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

18.    In addition, Plaintiff also brings this suit on behalf of a class of similarly situated persons for unpaid overtime wages pursuant to the PA State Laws:

> All current and former Tipped Employees who (i) have worked in excess of forty hours in one or more work weeks in the Commonwealth of Pennsylvania during the statutory period

covered by this Complaint and (ii) were not compensated for all
hours worked by Defendants (the "PA OT Class").

19.     The Collective Class, the Collective OT Class, the PA Class, and the PA OT
Class are hereafter collectively referred to as the "Classes."

20.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to
unpaid minimum wages from Defendants for hours worked for which Defendants failed to
comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as
required by law and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201
*et seq.*

21.     Plaintiff alleges on behalf of the Collective OT Class that they are: (i) entitled to
unpaid overtime wages from Defendants for hours worked for which Defendants failed to pay all
overtime wages due and owing and (ii) entitled to liquidated damages pursuant to the FLSA, 29
U.S.C. § 201 *et seq.*

22.     Plaintiff alleges on behalf of the PA Class that Defendants violated the PA State
Laws by failing to comply with the tip credit provisions, as required by law, and consequently
failing to pay them the appropriate minimum wages for all hours worked.  In addition,
Defendants also violated the PA State Laws by failing to pay the PA Class members the full
minimum wage for time spent performing non-tip generating work.  Finally, Defendants violated
the PA State Laws by failing to pay the PA Class members all the compensation due and owing
to them due to Defendants' policy/practice of requiring Tipped Employees to work off-the-clock.

23.     Finally, Plaintiff alleges on behalf of the PA OT Class that Defendants violated
the PA State Laws by failing to pay all overtime wages due and owing for weeks where Tipped
Employees worked in excess of forty (40) hours and Defendants did not include all hours worked
in the calculation of that employee's overtime pay.

## PARTIES

24.     Plaintiff Christina Mary Reynolds ("Plaintiff" or "Reynolds") is a resident of the Commonwealth of Pennsylvania, living in the Borough of North Wales, who was employed by Defendants as a "server" at their North Wales restaurant.   While employed as a Tipped Employee, Defendants failed to compensate Plaintiff properly for all hours worked.

25.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.  Her Consent To Sue form is attached hereto as Exhibit A.

26.     Upon information and belief Defendant Turning Point Holding Company, LLC ("Holding LLC") is a holding company that is an active member in Defendants Turning Point Pennsylvania, LLC ("Pennsylvania LLC") and Turning Point New Jersey, LLC ("New Jersey LLC").  Holding LLC is registered to do business in the State of New Jersey and maintains it corporate address at 1 Industrial Way West, Building D Unit G, Eatontown, NJ 07724.

27.     Upon information and belief Defendant Turning Point Pennsylvania, LLC is an active member in Defendants Turning Point of Blue Bell, LLC ("Blue Bell LLC"), Turning Point of North Wales, LLC ("North Wales LLC"), Turning Point of Warrington, LLC ("Warrington LLC"), Turning Point of Bryn Mawr, LLC ("Bryn Mawr LLC"), Turning Point of Newtown, LLC ("Newtown LLC").  Pennsylvania LLC is registered to do business in the Commonwealth of Pennsylvania and maintains its corporate address at 1584 Main Street, Warrington, PA 18976.

28.     Upon information and belief Defendant Turning Point New Jersey, LLC is an active member in Defendants Turning Point of Brick, LLC ("Brick LLC"), Turning Point of Hoboken, LLC ("Hoboken LLC"), Turning Point of Holmdel, LLC ("Holmdel LLC"), Turning Point of Little Silver, LLC ("Little Silver LLC"), Turning Point of Long Branch, LLC ("Long Branch LLC"), Turning Point of Manalapan, LLC ("Manalapan LLC"), Turning Point of

Westfield, LLC ("Westfield LLC"), Turning Point of Cherry Hill, LLC ("Cherry Hill LLC"), Turning Point of Marlton, LLC ("Marlton LLC"), Turning Point of Moorestown, LLC ("Moorestown LLC"), Turning Point of Princeton, LLC ("Princeton LLC"), Turning Point of Sea Girt, LLC ("Sea Girt LLC").  New Jersey LLC is registered to do business in the State of New Jersey and Commonwealth of Pennsylvania.  New Jersey LLC lists its corporate address as 1584 Main Street, Warrington, PA 18976 in its registration with Pennsylvania.

29.     Defendant Turning Point of Blue Bell, LLC ("Blue Bell LLC") is registered do to business in the Commonwealth of Pennsylvania and operates a Turning Point restaurant at 994 DeKalb Pike, Blue Bell, Pennsylvania 19422. Blue Bell LLC employed Tipped Employees during the period covered by this Complaint.

30.     Defendant Turning Point of North Wales, LLC ("North Wales LLC") is registered do to business in the Commonwealth of Pennsylvania and operates a Turning Point restaurant at 1460 Bethlehem Pike, North Wales, PA 19454. North Wales LLC employed Tipped Employees during the period covered by this Complaint.

31.     Defendant Turning Point of Warrington, LLC ("Warrington LLC") is registered do to business in the Commonwealth of Pennsylvania and operates a Turning Point restaurant at 1584 Main Street Warrington, Pennsylvania 18976.   Warrington LLC employed Tipped Employees during the period covered by this Complaint.

32.     Defendant Turning Point of Newtown, LLC ("Newtown LLC") is registered do to business in the Commonwealth of Pennsylvania and operates a Turning Point restaurant at 2841 South Eagle Road, Newtown, Pennsylvania 19422. Newtown LLC employed Tipped Employees during the period covered by this Complaint.

33.     Defendant Turning Point of Brick, LLC ("Brick LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 505 Route 70, Brick, NJ 08723.  Brick LLC employed Tipped Employees during the period covered by this Complaint.

34.     Defendant Turning Point of Hoboken, LLC ("Hoboken LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 1420 Frank Sinatra Drive, Hoboken, NJ 07030. Hoboken LLC employed Tipped Employees during the period covered by this Complaint.

35.     Defendant Turning Point of Holmdel, LLC ("Holmdel LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 2132 Route 35 South, Holmdel, NJ 07733. Holmdel LLC employed Tipped Employees during the period covered by this Complaint.

36.     Defendant Turning Point of Little Silver, LLC ("Little Silver LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 496 Prospect Avenue, Little Silver, NJ 07739.  Little Silver LLC employed Tipped Employees during the period covered by this Complaint.

37.     Defendant Turning Point of Long Branch, LLC ("Long Branch LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 92 Ocean Avenue, Long Branch, NJ 07740.  Long Branch LLC employed Tipped Employees during the period covered by this Complaint.

38.     Defendant Turning Point of Manalapan, LLC ("Manalapan LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 55 Route 9

South, Manalapan, NJ 07726. Manalapan LLC employed Tipped Employees during the period covered by this Complaint.

39.     Defendant Turning Point of Westfield, LLC ("Westfield LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 137 Central Avenue, Westfield, NJ 07090.  Westfield LLC employed Tipped Employees during the period covered by this Complaint.

40.     Defendant Turning Point of Cherry Hill, LLC ("Cherry Hill LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 606 Haddonfield Road, Cherry Hill, NJ 08002.  Cherry Hill LLC employed Tipped Employees during the period covered by this Complaint.

41.     Defendant Turning Point of Marlton, LLC ("Marlton LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 300 Route 73 South, Marlton, NJ 08053.  Marlton LLC employed Tipped Employees during the period covered by this Complaint.

42.     Defendant Turning Point of Moorestown, LLC ("Moorestown LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 1690 Nixon Drive, Moorestown, NJ 08057. Moorestown LLC employed Tipped Employees during the period covered by this Complaint.

43.     Defendant Turning Point of Princeton, LLC ("Princeton LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 3371 US Highway 1, Lawrenceville, NJ 08648.  Princeton LLC employed Tipped Employees during the period covered by this Complaint.

44.     Defendant Turning Point of Sea Girt, LLC ("Sea Girt LLC") is registered do to business in the State of New Jersey and operates a Turning Point restaurant at 2157 Route 35, Sea Girt, NJ 08750.  Sea Girt LLC employed Tipped Employees during the period covered by this Complaint

45.     Upon information and belief, Defendant Kirk Ruoff ("Ruoff") is the sole agent of Holding LLC.  Ruoff is, according to the Company's website, the founder and CEO of Turning Point.  *See* https://theturningpoint.biz/management/ (last visited March 11, 2019).  Upon information and belief, Ruoff is also the President, Manager or otherwise primary officer of each of the Defendants:  Pennsylvania LLC, Blue Bell LLC, North Wales LLC, Warrington LLC, Bryn Mawr LLC, Newtown LLC, New Jersey LLC, Brick LLC, Hoboken LLC, Holmdel LLC, Little Silver LLC, Long Branch LLC, Manalapan LLC, Westfield LLC, Cherry Hill LLC, Marlton LLC, Moorestown LLC, Princeton LLC and Sea Girt LLC, as well as the restaurants these Defendants operate.

46.     Moreover, Ruoff was identified as the "owner" in numerous health inspection reports for various Turning Point restaurant locations.  In his corporate capacity as CEO, Defendant Ruoff exercises sufficient control over the labor policies and practices of the Turning Point entities complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and the PA State Laws.

47.     Upon information and belief, Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing a common officer.  Each of these Defendants share the common labor policies and practices complained of herein.

48.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants.

49.     At all relevant times during the statutory period covered by this Complaint, Defendants have transacted business within the Commonwealth of Pennsylvania, including within this district.

50.     At all relevant times during the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated its restaurants under common control for a common business purpose.

51.     Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of Turning Point restaurants in the Commonwealth of Pennsylvania and in New Jersey.

52.     Defendants are a single and joint employer with a high degree of interrelated and unified operations, sharing a common officer.   In addition, Defendants share common management between restaurant locations, share common employees between locations, as well as share common human resources and payroll services.   All of Defendants' locations share the common labor policies and practices complained of herein.

53.     Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants. Evidencing the interrelation and unified operation of the Turning Point entities, many of the entities maintain the same corporate address and all have a common ownership/management structure. Further evidence of the interrelated nature of Defendants, Turning Point maintains one website which references each location.   Further, the Company's website identifies individuals who are responsible for the Turning Point's management, including the "New Store Development and Facility Director," the "Chief

Operating Officer," and the "Marketing & Technology Director." *See* https://theturningpoint.biz/management/ (last visited March 11, 2019).

54. Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

55. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

56. Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

57. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

58. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

59. The crux of the FLSA and the PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

60.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

61.     In addition, Plaintiff and the members of the Collective OT Class and PA OT Class were deprived of premium overtime compensation for all hours worked in excess of 40 per workweek.

62.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

63.     Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

64.     Defendants govern and administer each restaurant location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the specific restaurant location that a customer visits.

65.     For example, each of Defendants' restaurant locations use the brand name "Turning Point" at their respective location, offers the same basic array of products and services to the general public, utilize the same "point of sale" ("POS") system, and have the same basic hours of operation.  Further, all the restaurant locations advertise together on the same website.

66.     Further, Defendants' restaurant locations can "share" Tipped Employees and management level personnel.  Indeed, Plaintiff is aware of Tipped Employees going from the North Wales restaurant to cover staff shortages at other restaurant locations as well as managers from other locations coming in to fill temporary vacancies at the North Wales restaurant.

67.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and

practices at each of their locations.  Accordingly, Defendants are responsible for the employment practices complained of herein.

### Plaintiff's Experience Working For Defendant

68.    As set forth above, Plaintiff was employed by Defendants as a "server" in their North Wales restaurant location in the Commonwealth of Pennsylvania. Plaintiff worked at this location from in or about March 13, 2018 through July 15, 2018.

69.    Plaintiff was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

70.    When working as a server, Plaintiff was not required to split her tips with anyone. Rather, Defendants required her to "tip out" (aka share a portion of her tips) to the following groups of employees if they were working with her: bussers and/or baristas.

71.    Plaintiff's hourly wage rate from Defendants was $2.83 an hour. Plaintiff does not ever recall the hourly wage being raised by Defendants above $2.83 for any day worked, irrespective of how little tips were earned or the type of work performed.

72.    Plaintiff typically worked for Defendants at the North Wales restaurant Wednesday through Sunday, with her typical shift on Wednesday and Thursday running from 7:00 a.m. to 4:00 p.m.  On the weekends, her typical shift would last from 7:00 a.m. until 4:30 p.m. or 5:00 p.m.

73.    In addition, Plaintiff would occasionally work an extra shift in a week (working either Monday or Tuesday depending on the restaurant's needs).  In total, she typically worked between forty (40) and forty-eight (48) hours per work.  On occasion, Plaintiff would work in excess of fifty (50) hours per week.

74.     Plaintiff recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.  Plaintiff believes the timekeeping system was called "Aloha."

75.     Plaintiff typically started her shift approximately one-half hour before the restaurant opened to the general public and stayed anywhere from one-half hour to an hour after the last table left for the day.

76.     Defendants required Plaintiff and other Tipped Employees to arrive before the restaurants opened so that they could perform certain tasks in order to ensure the restaurant was prepared for its customers immediately upon opening.  These tasks included, among other things: making coffee; polishing silverware; making oatmeal; cutting lemons; uncovering the sauces; getting the fruit ready; and performing other general set up tasks.

77.     Defendants required Plaintiff and other Tipped Employees to stay after the last customer left and the restaurant closed for the day so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business. These tasks included, among other things: (i) vacuuming the restaurant; (ii) resetting the server station; (iii) cleaning the monitors; (iv) sweeping under the tables; (v) filling the salt/pepper/sugar caddies; (vi) filling the ketchup and "marrying" the bottles (where necessary); (vii) filling the dressings and ensuring there was sufficient back up (viii); and (ix) cleaning the coffee pots.

78.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work or when working prior to or after the restaurant opened/closed.  Indeed, to the best of Plaintiff's knowledge, Defendants did not keep track of such time separately from Plaintiff's entries into the POS system.

79.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

### The Tip Credit Provision & Requirements

*FLSA Requirements*

80.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

81.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[3]

82.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under
> the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the
> minimum required cash wage of $2.13).

83.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

84.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

---

[3] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage.  That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit.  Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

85.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

86.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

87.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

88.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

89.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

90.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[4] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

91.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns

---

[4] Courts have strictly construed this notification requirement.  Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

92.     As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Pennsylvania's Requirements***

93.     Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements.  *See* 43 P.S. § 333.103(d).

94.     Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour.  Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[5]

95.     As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

96.     In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

(1)   A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

---

[5] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee.  *See* 43 P.S. § 333.103(d).

(2)  Weekly or monthly amount reported by the employee, to the employer, of tips received.  This may consist of reports made by the employees to the employer on IRS Form 4070;

(3)  Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage.  The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

(4)  Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(5)  Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

### Defendants' Failure To Comply With Applicable Wage Laws

97.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

98.    Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees $2.83 per hour. In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

99.     The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

100.     Indeed, Plaintiff does not ever recall being notified by Defendants that it intended to take a "tip credit," nor how much that amount would be.   Evincing the magnitude of Defendants' abject failure to notify Tipped Employees of their intention to take a tip credit, until recently, Plaintiff never even heard the term "tip credit."

101.     Further indicative of Defendants' wholesale violation of the applicable tip credit provisions, Plaintiff is aware of at least one instance where Defendants made a server forfeit a portion of their tips in order to make up a cash shortage in that server's bank.

102.     In addition, Defendants also violated the tip credit provisions as they did not adjust Plaintiff's hourly cash wage for those shifts where Plaintiff earned little to no tips.   Indeed, Plaintiff recalls one instance where she worked all day (from at least 7:00 a.m. to 4:30 p.m.) and earned only $30 in tips that day.

103.     Further, Plaintiff recalls several instances where the managers stated that they "have to get everybody off the clock" because employees were at or over 40 hours for the week. Indeed, Plaintiff recalls being told specifically that she was over 40 hours for the week and therefore they needed her "off the clock."

104.     In such instances, Plaintiff recalls having to clock out and then spending an extra ten (10) to fifteen (15) minutes finishing her work, including running dishes and stacking them, and racking silverware.

105.     As set forth above, these acts constitute violations of the tip credit requirements. *See, e.g.,* Fact Sheet #15.

106.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing whenever the tip credit claimed by Defendants changed.   Rather, Defendants took the maximum tip credit permissible irrespective of whether its Tipped Employee actually earned sufficient tips to substantiate the tip credit claimed.

107.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips. Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

108.     Indeed, Defendants violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiff, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as before or after the restaurant was opened/closed to the public. At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

109.     Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiff and the other Tipped Employee were engaged in non-tip generating work.

110.     Because of the above violations, Defendants owe Plaintiff and the other Tipped Employees $4.42 for every hour they worked and were only paid $2.83 per hour.   Thus, the amounts due and owing are significant.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

111.    Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

112.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed. R. Civ. P. 23.

113.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple restaurants, there are likely dozens of individuals in each of the Classes.[6]

114.    Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

115.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.  Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

116.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

---

[6] Indeed, Plaintiff estimates that while she was employed at the North Wales restaurant, there were approximately fifteen Tipped Employees scheduled to work on a weekend shift.

(a)      whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)      whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)      whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)      whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

117.     Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes.  Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

118.     The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

119.     Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

120.     Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
#### (On Behalf of the Collective Class)

121.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

122.    At all relevant times, Defendants has had gross revenues in excess of $500,000.

123.    At all relevant times, Defendants have been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

124.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

125.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

126.    Defendants have violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

127.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### SECOND CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
#### (On Behalf of the Collective OT Class)

128.    Plaintiff, on behalf of herself and the Collective OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

129.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed herein.

130.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the Collective OT Class.

131.    At all relevant times, Plaintiff and the members of the Collective OT Class were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s).

132.    At all relevant times, Plaintiff and the members of the Collective OT Class were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

133.    At all relevant times, Defendants have been an enterprise engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s) with annual gross volume of sales made or business done in excess of $500,000.00.

134.    At all relevant times, Defendants employed Plaintiff and the members of the Collective OT Class within the meaning of 29 U.S.C. § 203(g).

135.    As stated above, Defendants had a policy and practice of failing to pay for all overtime hours worked by their Tipped Employees who worked in excess of forty (40) hours per week.

136.    Defendants' failure to pay Plaintiff and all other members of the Collective OT Class the proper overtime compensation due and owing is a violation of 29 U.S.C. §§ 206, 207.

137.    In violating the FLSA, Defendants acted willfully and with disregard of clearly applicable FLSA provisions.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

138.    Due to the Defendants' FLSA violations, Plaintiff and the members of the Collective OT Class are entitled to recover from Defendants their unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

139.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

### THIRD CLAIM FOR RELIEF
### PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
#### (On Behalf of the PA Class)

140.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

141.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

142.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Defendants improperly took a tip credit and paid Tipped Employees at a rate well below the Pennsylvania minimum wage.

143.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

144.     As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

145.     Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

146.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW**
**(On Behalf of the PA Class)**

147.     Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

148.     At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

149.     Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

150.     As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

151.     Indeed, it is black letter law that an employee cannot voluntarily agree or contract to be paid less than the legal minimum wage for each hour worked.  Accordingly, at a minimum, an employee must contract to be paid at least the minimum wage for each hour worked.  Through

the practices described above, Defendants paid Plaintiff and other Tipped Employees less than the legal minimum wage for each hour worked.

152.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

**FIFTH CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the PA OT Class)**

153.    Plaintiff, on behalf of herself and the members of the PA OT Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

154.    At all relevant times, Plaintiff and the members of the PA OT Class were "Employees" and Defendants were their "Employer" within the meaning of the PMWA.

155.    The PMWA provides that employees who work over 40 hours in a workweek shall receive "1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week."  43 P.S. § 333.104(c).

156.    Defendants violated the PMWA by failing to pay Plaintiff and the members of the PA OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.

157.    In violating the PMWA, Defendants acted willfully and with disregard of clearly applicable PMWA provisions.

158.    Pursuant to the PMWA, 43 P.S. § 333.113 Plaintiff and the members of the PA OT Class are entitled to recover from Defendants an amount equal to unpaid overtime compensation for all the hours worked in excess of forty hours in a work week for which they

did not receive the proper overtime compensation, in an amount to be proven at trial, together with interest, costs and reasonable attorneys' fees.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the PA Class respectfully requests the Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the Collective Class and Collective OT Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.      Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class and PA OT Class;

C.      Designation of Plaintiff as representative of the Collective Class, the Collective OT Class, the PA Class, and the PA OT Class;

D.      Designation of Plaintiff's counsel as class counsel for the Collective Class, the Collective OT Class, the PA Class, and the PA OT Class;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, PMWA and WPCL;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.      An award of unpaid overtime wages to Plaintiff and the members of the Classes

I.      An award of liquidated damages to Plaintiff and members of the Classes;

J.      An award of interest to Plaintiff and members of the PA Class and PA OT Class;

K.      An award of costs and expenses of this action together with reasonable attorneys'
and expert fees to Plaintiff and members of the Classes; and

L.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands
a trial by jury on all questions of fact raised by the complaint.


Dated: May 2, 2019                          Respectfully submitted,

                                            **CONNOLLY WELLS & GRAY, LLP**

                                            By: _____
                                                 Gerald D. Wells, III
                                            Robert J. Gray
                                            2200 Renaissance Blvd., Suite 275
                                            King of Prussia, PA 19406
                                            Telephone: 610-822-3700
                                            Facsimile: 610-822-3800
                                            Email: gwells@cwglaw.com
                                                      rgray@cwglaw.com

                                            **CARLSON LYNCH SWEET KILPELA
                                            & CARPENTER, LLP**
                                            Gary F. Lynch
                                            1133 Penn Ave, 5th Floor
                                            Pittsburgh, PA 15222
                                            Telephone: 412-322-9243
                                            Facsimile: 412-231-0246
                                            Email: glynch@carlsonlynch.com

                                            *Attorneys for the Plaintiff & the Proposed
                                            Classes*

# EXHIBIT A

## CONSENT TO BECOME A PARTY PLAINTIFF

1.      I, CHRISTINA REYNOLDS, consent to sue as a Plaintiff in this action, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

2.      During the applicable period, I was an employee of Defendants and was not paid properly for all hours worked.

3.      By my signature below, I hereby authorize counsel to prosecute the claims in my name and on my behalf, in this action, for Defendants' failure to pay all wages due and owing in accordance with federal law.

3/28/2019

_____

Date

_____
Christina Reynolds

Print Name

_____

Signature