**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTINA M. REYNOLDS, et al.,** | |
| *Plaintiffs,* | Case No. 2:19-cv-01935-JDW |
| v. | |
| **TURNING POINT HOLDING COMPANY, LLC, et al.,** | |
| *Defendants.* | |

## MEMORANDUM

The Fair Labor Standards Act is unique among federal statutes, in that it offers non-parties whose interests are affected the choice to opt in and participate in litigation. To give effect to that provision, the choice must be real, and the non-parties who have the choice must be free to make it without any sort of compulsion or gun to their head. The settlement that the Parties propose in this case does not honor that freedom of choice. It offers members of a proposed class a chance to recover under Pennsylvania and New Jersey wage-and-hour laws, but only if they also exercise their "choice" to opt in as FLSA plaintiffs. But only in The Matrix is "choice … an illusion,"[1] and this isn't the Matrix. Because the Parties would tie the choice to opt in to the right to participate in a class settlement, their proposed settlement is not fair and reasonable, and the Court will not grant them preliminary approval.

---

[1] The Matrix Reloaded (Warner Bros. Pictures 2003).

## I.    BACKGROUND

### A.    The Claims In This And Related Matters

Christina Reynolds filed this case, alleging that Turning Point restaurants in Pennsylvania and New Jersey did not provide adequate notice of a tip credit and required excessive amounts of side work. She asserted claims under the Fair Labor Standards Act and state wage and payment laws. In February 2020, the Court dismissed her claims against New Jersey entities for lack of personal jurisdiction. *See Reynolds v. Turning Point Holding Co., LLC, et al.*, Case No. 2:19-cv-1935-JDW, 2020 WL 953279 (E.D. Pa. Feb. 26, 2020). In December 2020, the Court denied Ms. Reynolds's request for class certification as to her Pennsylvania Minimum Wage Act claims and denied her request to certify a collective under the Fair Labor Standards Act based on her claims concerning insufficient notice of a tip credit. However, the Court granted conditional certification of an FLSA collective as to Ms. Reynolds' claims about untipped side work. *See Reynolds v. Turning Point Holding, LLC*, Case No. 2:19-cv-1935-JDW, 2020 WL 7336932 (E.D. Pa. Dec. 14, 2020).

The Court's two decisions led to additional litigation. Christina Nulph filed an action in the United States District Court for the District of New Jersey, Case No. 20-cv-6089, asserting claims under the FLSA and the New Jersey Wage and Hour Law. Ms. Nulph asserted claims based on unpaid side work and lack of notice of a tip credit. Ms. Nulph filed a motion for class and collective certification in that matter, but the Parties agreed to suspend briefing on the motion in order to explore settlement. In addition, Plaintiffs' Counsel prepared to file another action on behalf of Rosemary

Barba, asserting violations of the FLSA and PMWA on the notice issue. However, the Parties agreed to hold the *Barba* matter in abeyance while they explored mediation.

### B.    The Settlement Agreement

The Parties in the *Reynolds*, *Nulph*, and *Barba* matters engaged in omnibus settlement discussions. Following mediation before the Hon. Diane M. Welsh (Ret.), the Parties finalized a Joint Stipulation Of Settlement And Release Agreement (the "Settlement Agreement") to resolve the claims in all three cases, covering the period of May 19, 2017, through August 31, 2021. In order to effectuate the settlement, the Parties seek to certify a settlement class comprised of three subclasses: 1) the FLSA Class, 2) the PA Class, and the 3) NJ Class. The FLSA Class is:

> Any current or former Tipped Employees who elect to opt-in to the Litigation who were employed by Defendants at a Turning Point restaurant in Pennsylvania or New Jersey [during the relevant time period] to which Turning Point did not pay the full federal minimum wage because it claimed a tip credit for that employee pursuant to Section 203(m) of the FLSA.

The PA Class and NJ Class include:

> Any current or former Tipped Employees who were employed by Defendants at a Turning Point restaurant in Pennsylvania at any time [during the relevant time period] to which Turning Point did not pay the full state minimum wage because it claimed a tip credit for that employee pursuant to applicable state laws ….

The PA Class relies on the PMWA, while the NJ Class relies on the NJWHL. Class members can exclude themselves from the PA and NJ Classes by submitting a timely exclusion request.

The Settlement Agreement utilizes a claims-made process to distribute the settlement proceeds. Thus, in order to recover compensation pursuant to the

Settlement Agreement, a class member must submit a timely Claim Form. Pursuant to the terms of the Settlement Agreement, submission of a Claim Form also constitutes an opt-in to the FLSA collective action. (ECF No. 125 at Section 2.21.) Those who submit a Claim Form release all of their FLSA and state law wage claims. Only Participating Settlement Class Members receive compensation under the Settlement Agreement. Members of the PA and NJ Classes who do not opt out and do not submit a Claim Form just release their respective state law claims, and they do not receive any compensation.

### C.    The Preliminary Approval Motion

On February 7, 2022, Ms. Reynolds filed an Unopposed Motion To Preliminarily Approve Class And Collective Action Settlement, Certify The Settlement Class, Appoint Class Counsel, Approve Proposed Class Notice, And Schedule A Final Approval Hearing. In her Motion, Ms. Reynolds seeks leave to file an Amended Complaint that will consolidate the *Reynolds*, *Nulph*, and *Barba* claims before this Court. In addition, the Motion asks the Court to: 1) grant preliminary approval of the Parties' proposed settlement; 2) certify the proposed Settlement Class for settlement purposes; 3) appoint Plaintiffs as the class/collective representatives and their Counsel as "Class Counsel;" 4) approve the form and manner of class notice; 5) set a Bar Date of sixty days after dissemination of the notice; and 6) set a date for a Final Approval Hearing.

On March 24, 2022, the Court held a hearing on the Motion and raised concerns about the Parties' selection of a claims-made settlement process, as well as the legality of requiring class members to opt in to the FLSA collective to recover as part of a

certified state law class. Following the hearing, the Court provided the Parties with the options of: 1) filing supplemental briefing on these issues, 2) submitting a revised settlement for approval, or 3) filing a motion to decertify the conditionally-certified FLSA collective. The Parties filed a supplemental brief in further support of the Motion, which is now ripe for disposition.

## II.    LEGAL STANDARD

Review of proposed Rule 23 class settlement typically proceeds in two steps: (1) a preliminary fairness evaluation and (2) a formal fairness hearing following a notice period. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp.2d 708, 713-14 (E.D. Pa. 2014). The Rule 23 process governs class action settlements but not FLSA collective actions. Nonetheless, courts in this Circuit apply the two-step process to FLSA claims as well. *See, e.g., Hall v. Accolade, Inc.*, No. 17-cv-3423, 2019 WL 3996621, at *3 n. 2 (E.D. Pa. Aug. 23, 2019) (preliminarily approving FLSA collective action based on same two-step Rule 23 approval process); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *9 (E.D. Pa. Sept. 9, 2011).

Trial courts have discretion about whether to grant preliminary approval of a proposed class action settlement. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) (quotation omitted). "[T]he 'fair, reasonable and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies. . . .'" *Nat'l Football League,* 961 F. Supp.2d at 714 (same). Nevertheless, "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Id.* (same). Rather, it is "based on an examination of whether the

proposed settlement is 'likely' to be approved under Rule 23(e)(2)." *Wood v. Saroj & Manju Invs. Philadelphia LLC*, No. 19-cv-2820, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (citations omitted). Again, "the inquiry into whether a settlement should be approved under the FLSA 'largely overlap[s]' with Rule 23 analysis[,]" so, when evaluating a proposed settlement of a bona fide FLSA dispute, the Court assesses whether the settlement is fair and reasonable. *Caddick v. Tasty Baking Co.*, No. 19-cv-2106-JDW, 2021 WL 1374607, at *7 (E.D. Pa. Apr. 12, 2021) (quotation omitted).

## III.   ANALYSIS

### A.   The Opt-In Requirement

In wage-and-hour cases like this one, two different mechanisms govern collective litigation. For claims under state laws, Rule 23's opt-out class action provisions apply. Rule 23 presumes that a judgment or settlement will apply to absent class members who receive notice of the action, unless they request exclusion. *See* Fed. R. Civ. P. 23(c)(2)(B)(v). The FLSA prohibits traditional, opt-out class actions. Instead, it provides, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

These conflicting provisions make settlement of wage-and-hour classes "tricky." *Wyms v. Staffing Sols. Se., Inc.*, No. 15-cv-643, 2016 WL 3682858, at *2 (S.D. Ill. July 12, 2016). A defendant, understandably, wants its settlement payment to buy as broad a release as possible, but it cannot use Rule 23 to compel the release of unasserted FLSA claims. Faced with that problem, Turning Point seeks to compel any member of the class to opt in to the FLSA collective before getting something of value

under the settlement. Any class member that does not agree to opt in will release his claims but receive nothing, unless he affirmatively opts out.

The Court concludes that the structure of the Parties' proposed settlement would violate the FLSA, for at least two reasons. *First*, the FLSA's opt-in requirement gives individuals a choice whether to become party plaintiffs in an FLSA action. The terms of the proposed settlement undermine that choice by imposing a penalty—forfeiture of the right to participate in the settlement of state law claims—for exercising that choice. *Second*, the release of FLSA claims would be illusory. The FLSA's opt-in structure means that there must be specific compensation for the release of an FLSA claim. *See* 29 U.S.C. § 216(b). But under the Parties' settlement, a class member would not receive anything extra for releasing his FLSA claims; he would just avoid a penalty. The Court concludes that the FLSA does not permit the Parties to use Rule 23 to compel class members to opt into the FLSA collective because that structure renders illusory the choice that the FLSA guarantees.

The Court's decision does not break new ground. At least one court has explained that a choice not to opt in to an FLSA action under these circumstances is "illusory because it extracts a penalty"—forfeiture of all state law claims and "[n]o employee would avoid cashing the check—to do so would mean forfeiting the [settlement] proceeds without retaining any ability to bring [state law] claims." *Douglas v. Allied Universal Sec. Servs.*, 381 F. Supp.3d 239, 242-43 (E.D.N.Y. 2019). Many other courts around the country have reached a similar conclusion. *See, e.g.*, *Anderson v. Team Prior, Inc.*, No. 19-cv-452, 2021 WL 3852720, at *10 (D. Me. Aug. 27, 2021) (rejecting "all-or-nothing proposition" in proposed settlement that did not allow

class members to settle just their FLSA claims or just their state wage claims); *Howard v. Web.com Grp. Inc.*, No. 19-cv-513, 2020 WL 3827730, at *10 (D. Ariz. July 8, 2020) (refusing preliminary approval where proposed settlement did not "provide any mechanism for a recipient to participate in the State Law Class but not opt in to the FLSA Collective Action"); *Maciel v. Bar 20 Dairy, LLC*, No. 17-cv-902, 2018 WL 5291969, at *8 (E.D. Cal. Oct. 23, 2018) (same); *Sharobiem v. CVS Pharmacy, Inc.*, No. 13-cv-9426, 2015 WL 10791914, at *3 (C.D. Cal. Sept. 2, 2015) (expressing "serious reservations" about the scope of a similar release where the failure to opt in to the FLSA class operated as a "penalty"); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607-08 (E.D. Cal. 2015); *see also Leap v. Yoshida*, No. 14-cv-3650, 2015 WL 619908, at *5 (E.D. Pa. Feb. 12, 2015) (expressing concern about the "risk that those Class/Collective Members who neither opt in nor opt out may waive their class action claims *and* receive no settlement payment" but deferring the issue until final fairness hearing) (original emphasis). The Court has reviewed these cases, and it finds their reasoning persuasive and in line with its own. The Parties try to distinguish these cases, but the various distinctions that they draw do not undermine the persuasiveness of those cases.

None of the Parties' arguments salvages their proposed settlement. *First*, they argue that the Court should ignore the cases that reject these types of settlements because they "have not been meaningfully cited outside of California." (ECF No. 131 at 13.) But the list of cases that the Court has cited includes decisions from Maine, New York, and Arizona, as well as from California. In any event, the Parties have not pointed to any nuance of Ninth Circuit law that makes these cases inapplicable here, and the

Court has not found anything that renders them inapplicable. The Court sees no reason to discount their logic.

*Second*, the Parties argue that Plaintiffs would be prohibited from recovering on duplicative state and federal claims if this case went to trial. But that argument misses the point. The only people to whom that prohibition would apply would be those who have already, by choice, opted into the FLSA claims in the case. The Parties' argument ignores "the most conspicuous difference between the FLSA collective action device and a class action under Rule 23[:] … that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (quotation omitted). While unnamed class members may be bound by a settlement of the class action, they are not ***parties*** to the action itself. To apply claim preclusion in a case involving different parties runs counter to fundamental principles of res judicata. *See Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) ("A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) **the same parties** or their privies and (3) a subsequent suit based on the same cause of action.'") (emphasis added) (quotation omitted). Also, to construe a failure to opt out of a Rule 23 class action as a waiver of FLSA rights "would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (citations omitted). To the extent the Parties argue that there might be a double

recovery in a separate FLSA action, that issue is for the future, when a court can decide whether and by how much to reduce the damages at stake.

*Third*, and finally, the Parties suggest that the issue here is one of notice, but it is not. The structure of the settlement tries to compel class members to give up an additional claim—their FLSA claim—in exchange for participating in the settlement of a state law claim. No amount of notice can cure that problem. That flaw renders this case unlike the settlement that the Court approved in *Caddick v. Tasty Baking Co.*, No. 19-cv-02106-JDW, 2021 WL 4989587 (E.D. Pa. Oct. 27, 2021), in which the issue before the Court was how to ensure that those who made the choice to opt in understood the significance of the settlement to which they were agreeing. The parties in *Caddick* did not try to force absent class members to opt in; instead, they respected the choice that each class member made. Nor is there a need for the Court to wait and see the Class's reaction after sending notice. By then, the damage will be done. And, because there is no scenario in which a settlement that imposes the compulsive choice that the Parties propose here will be fair and reasonable, the Court need not wait for a final approval hearing to reject this proposed settlement.

### B.     The Claims Made Process

During the hearing on this Motion, the Court also asked about the Parties' decision to employ a claims-made process, even though Turning Point presumably has each class member's name and contact information. As the Parties point out, there is some authority that supports their proposed use of a claims made process here. And, unlike with the question of the opt-in requirement, the Court could wait until after the claims process, when the Parties would have information about participation rates,

to determine whether the claims made process posed a problem. In any event, given the Court's decision concerning the opt-in requirement, the Court need not resolve that question now.

## IV.    CONCLUSION

The Court cannot grant preliminary approval of the Settlement Agreement because the terms of the agreement are coercive, meaning they are neither fair nor reasonable. Because the Court could not approve the settlement at final approval, it need not address other issues—such as class certification and notice—that the Parties' Motion raises. An appropriate Order denying the Parties' Motion follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

July 7, 2022