**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTINA MARY REYNOLDS, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>TURNING POINT HOLDING COMPANY, LLC, *et al.*,<br>       Defendants. | Civil Action No.: 2:19-CV-01935-JDW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION TO PRELIMINARILY APPROVE CLASS AND COLLECTIVE
ACTION SETTLEMENT, CERTIFY THE RULE 23 CLASS AND THE FLSA
COLLECTIVE, APPOINT CLASS COUNSEL, APPROVE PROPOSED
<u>CLASS NOTICE, AND SCHEDULE A FINAL APPROVAL HEARING</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND AND STATUS OF THE LITIGATION ........................................ 3

AMENDED COMPLAINT ...................................................................................... 6

SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT ................... 7

    A.  The Proposed Rule 23 Class and FLSA Collective ........................................ 7

    B.  The Proposed Class Notice ........................................................................... 8

    C.  Monetary Terms ............................................................................................ 9

    D.  Dismissal and Release of Claims ............................................................... 11

    E.  Proposed Schedule Following Preliminary Approval................................. 12

ARGUMENT ......................................................................................................... 12

    A.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED
        BY THE COURT ........................................................................................ 12

        1.  Standard for Approval of FLSA Settlements ........................................ 13

        2.  Standard for Approval of Class Action Settlements .............................. 14

            a.  Complexity, Expense, And Likely Duration Of The Litigation ......................... 16

            b.  Reaction Of The Class To The Settlement ........................................ 17

            c.  Stage Of The Proceedings And The Amount Of Discovery Completed ............. 17

            d.  Risks Of Establishing Liability And Damages ................................... 17

            e.  Risks Of Maintaining The Class Action Through The Trial .............................. 18

            f.  Ability Of Defendants To Withstand A Greater Judgment ................................. 18

            g.  Range of Reasonableness Of The Settlement Fund In Light
               Of The Best Possible Recovery And All The Attendant Risks
               Of Litigation................................................................................... 19

            h.  The Permissive Factors Also Support Settlement............................... 19

B.  THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR
SETTLEMENT PURPOSES .................................................................21

1.  The Rule 23 Class Should Be Certified As Provided For In The Settlement
Agreement ..............................................................................................21

2.  Rule 23(a) Requirements Are Satisfied .................................................21

a.  23(a)(1) - "Numerosity"...............................................................21

b.  Rule 23(a)(2) – "Commonality" ..................................................22

c.  Rule 23(a)(3) – "Typicality"........................................................22

d.  Rule 23(a)(4) – "Adequacy" ........................................................23

e.  Rule 23(b) Requirements Are Satisfied Here .............................24

C.  FLSA COLLECTIVE MEMBERS ARE SIMILARLY SITUATED ............25

D.  THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE
APPROVED ..........................................................................................26

E.  CONNOLLY WELLS & GRAY, LLP, AND LYNCH CARPENTER, LLP
SHOULD BE APPOINTED AS CLASS COUNSEL ..................................27

CONCLUSION...................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................... 24

*Austin v. Pennsylvania Dep't of*,
  876 F. Supp. 1437 (E.D. Pa. 1995) ................................................................. 16

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. Dec. 15, 1994) ................................................................. 23

*Bernhard v. TD Bank, N.A.*,
  2009 WL 3233541 (D.N.J. Oct. 5, 2009) ...................................................... 17

*Brown v. TrueBlue, Inc.*,
  2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) .............................................. 13

*Brumley v. Camin Cargo Control, Inc.*,
  2012 WL 1019337 (D.N.J. Mar. 26, 2012) ........................................... 13, 14

*Caddick v. Tasty Baking Co.*,
  2021 WL 1374607 (E.D. Pa. April 12, 2021).......................................... 13, 26

*Casco v. Ponzios RD, Inc.*,
  2018 WL 2002787 (D. N.J. April 30, 2018)................................................. 21

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .............................................................................. 17

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) ........................................................................... 23

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ........................................................................... 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................... 26

*Fein v. Ditech Fin., LLC*,
  2017 WL 4284116 (E.D. Pa. Sep. 26, 2017)................................................ 26

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) ........................................................... 19

*Gaskin v. Pennsylvania*,
    389 F. Supp.2d 628 (E.D. Pa. 2005) ..................................................... 16

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008) ......................................................... 15

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ............................................................. 15

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .............................................................. 15

*Harshbarger v. Penn Mut. Life Ins. Co.*,
    2017 WL 6525782 (E.D. Pa. Dec. 20, 2017)......................................... 18

*In re Centocor, Inc. Secs. Litig. III*,
    1999 WL 54530 (E.D. Pa Jan. 27, 1999)............................................... 22

*In re Chickie's & Pete's Wage and Hour Litig.*,
    2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ............................................ 13

*In re Corel Corp. Secs. Litig.*,
    206 F.R.D. 533 (E.D. Pa. 2002) ......................................................... 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................... 16, 19

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 18

*In re Ikon Off. Sols., Inc. Sec. Litig.*,
    209 F.R.D. 94 (E.D. Pa. 2002) ........................................................... 17

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ..................................... 15, 19, 23, 25

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................... 13, 15, 17, 24

*In re Traffic Executive Association-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980) .............................................................. 15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .............................................................. 12

*Koenig v. Granite City Food & Brewery, Ltd.*,
   2017 WL 2061408 (W.D. Pa. May 11, 2017) ...................................................... 25

*Kraus v. PA Fit II, LLC*,
   155 F. Supp. 3d 516 (E.D. Pa. 2016) .................................................................. 20

*Lynn's Food Stores. Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) ................................................................... 13, 14

*Mejia v. KVK-Tech, Inc.*,
   2020 WL 5292074 (E.D. Pa. Sept. 4, 2020) ........................................................ 20

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. June 26, 2012) .......................................................... 23

*Schwartz v. Dana Corp.*,
   196 F.R.D. 275 (E.D. Pa. 2000) ........................................................................ 22

*Soles v. Zartman Constr., Inc.*,
   2014 WL 3557197 (M.D. Pa. July 18, 2014) .................................................... 23

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ....................................................................... 22, 25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................... 22

*Wintjen v. Denny's, Inc.*,
   2021 WL 5370047 (W.D. Pa. Nov. 18, 2021) ......................................... 21, 24, 25, 27

*Wood v. Saroj & Manju Invs. Philadelphia LLC*,
   2020 WL 7711409 (E.D. Pa. Dec. 28, 2020) ...................................................... 13

**Statutes**

29 U.S.C. §§ 201 *et seq.*...................................................................................... passim

43 P.S. § 333.101 *et seq.*................................................................................... passim

N.J.S.A. 34:11-56a *et seq.*.................................................................................. passim

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 23(a) .............................................................................................. 23

Fed. R. Civ. P. 23(a)(2) ................................................................................. 22

Fed. R. Civ. P. 23(a)(3) ................................................................................. 22

Fed. R. Civ. P. 23(a)(4) ................................................................................. 23

Fed. R. Civ. P. 23(b) ...................................................................................... 24

Fed. R. Civ. P. 23(b)(3) ................................................................................. 24

Fed. R. Civ. P. 23(c)(2) ................................................................................. 26

Fed. R. Civ. P. 23(e) ................................................................................. 14, 15

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................... 9, 26

Fed. R. Civ. P. 23(e)(1)(B)(i) ........................................................................ 13

Fed. R. Civ. P. 23(e)(2) ................................................................................. 13

Fed. R. Civ. P. 23(g) ...................................................................................... 27

**Other Authorities**

H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ............. 14

Manual for Complex Litigation § 21.632-633 (4th ed. 2004) ..................................... 14

Manual for Complex Litigation, §21.312 ................................................................. 26

## INTRODUCTION

Plaintiffs[1], individually and on behalf of all others similarly situated, by and through their counsel, hereby respectfully move the Court for preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in the revised Settlement Agreement ("Settlement Agreement" or "SA") (attached as **Exhibit 1** to the contemporaneously filed Declaration of Gerald D. Wells, III ("Wells Decl.")). Plaintiffs, with consent of Defendants, request that the Court enter the proposed Preliminary Approval Order that would:

1. Have the Amended Complaint (ECF 124), serve as the operative complaint in this Litigation;

2. Grant preliminary approval of the proposed Settlement;

3. Certify, for settlement purposes only, the Rule 23 Class which consists of any current or former Tipped Employees from the NJ Class or PA Class, employed by Defendants within the State of New Jersey or the Commonwealth of Pennsylvania, respectively, who worked for Defendants at any time during the period of time between May 19, 2017 through August 31, 2021;

4. Certify, for settlement purposes only, the FLSA Collective;

5. Approve the form and content of, and direct the distribution of, the proposed Class Notice;

6. Appoint the law firms of Connolly Wells & Gray, LLP ("CWG") and Lynch Carpenter, LLP ("LC") as Class Counsel for the Rule 23 Class and FLSA Collective; and

---

[1] All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

1

      7.    Set a date for the Final Approval Hearing between 90 and 120 days after entry of

           the Preliminary Approval Order.

Class Counsel, on behalf of Plaintiffs and a proposed class of individuals, have agreed to settle all claims against Defendants for alleged violations of: (1) the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq*. ("FLSA"); (2) the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq*. ("PMWA"); and (3) the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq*. ("NJWHL"). Plaintiffs allege that Defendants systematically and willfully denied their Tipped Employees all wages due and owing. As set forth in the Settlement Agreement, all Tipped Employees who do not opt out of the Settlement—*i.e.*, all Rule 23 Class members—will receive a payment under the Settlement in consideration for the release of their state-law claims. All Tipped Employees who affirmatively opt into the FLSA Collective—*e.g.*, by submitting a valid and timely Claim Form if they have not previously submitted a Consent to Sue Form—will receive an additional payment in consideration for the release their FLSA claims. These releases and how payments will be calculated are set forth in detail in the proposed Class Notice that will be sent to all Tipped Employees. The Parties anticipate that the Class Notice will be sent to approximately 2,500 Tipped Employees.

     As set forth below, the proposed Settlement is the product of fully informed, intense arms-length settlement negotiations, including two all-day mediation sessions before the Hon. Diane M. Welsh (Ret.).[2] The Settlement satisfies all of the prerequisites for preliminary approval and certification of the Rule 23 Class and FLSA Collective. The proposed Settlement is fair, reasonable, and adequate as it recognizes the risks of continued litigation, especially in light of

---

[2] The Declaration of Hon. Diane M. Welsh (Ret.) of JAMS in Support of Proposed Class Settlement ("Welsh Decl.") is being contemporaneously filed.

Defendants' precarious financial position, while providing substantial relief to the Settlement Class Members. The Settlement also benefits from and conforms to this Court's guidance regarding what this Honorable Court believes is the proper structure for a hybrid FLSA class settlement.  For these reasons, and those fully articulated below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.[3]

## BACKGROUND AND STATUS OF THE LITIGATION

On May 3, 2019, Christina Reynolds ("Reynolds") sued Defendants in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:19-CV-01935-JDW. *See* ECF 1. On her own behalf, and on behalf of a putative class and putative collective, Ms. Reynolds asserted claims under the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"). In response, Defendants sought dismissal of the New Jersey Defendants, which the Court granted after the Parties fully briefed the issue. (*See* ECF 12; ECF 15). Thereafter, on August 16, 2019, Ms. Reynolds filed an amended complaint identifying only those entities operating in Pennsylvania. (ECF 20). Thereafter, Defendants filed their Answer. (ECF 22).

On July 2, 2020, after completing initial discovery including conducting a Rule 30(b)(6) deposition over the course of several days, Ms. Reynolds moved for class certification (ECF 48) and collective certification (ECF 49). On December 14, 2020, the Court granted conditional collective certification regarding the issue of excessive/unrelated side work. (ECF 69). However, the Court denied class certification due to Ms. Reynolds' unique onboarding situation when she was hired. *Id.*

---

[3] While Defendants vehemently deny liability, they do not oppose this Motion, and support preliminary approval of the Settlement Agreement, certification of the proposed classes for settlement purposes only, and dissemination of the Class Notice to the Tipped Employees.

Due to the Court declining to grant class certification regarding the tip credit notification claim in the *Reynolds* Action, Plaintiffs began to prepare to file the *Barba* Action on behalf of Rosemary Barba ("Barba"). The *Barba* Action was prepared to assert violations of both the FLSA and PMWA on a collective and class basis respectively due to Defendants' failure to provide complete and accurate tip credit notification to their Tipped Employees in violation of the FLSA and PMWA. However, an accord was reached with counsel for Defendants that the *Barba* Action would be held in abeyance pending the Parties' mediation efforts.

Following this Court's certification rulings, Christina Nulph ("Nulph") filed her action in the United States District Court for the District of New Jersey, Case No. 1:20-CV-06089, asserting both FLSA and NJWHL wage claims on May 19, 2020. Plaintiff Nulph asserted that Defendants violated applicable wage laws by requiring Tipped Employees who worked in New Jersey to perform excessive sidework/work unrelated to their job occupation as Tipped Employees and violated the tip credit notification requirements. Defendants filed their answer on July 20, 2020. Like the *Reynolds* Action, the parties participated in an initial round of discovery that included both written discovery and depositions. During discovery in this matter, Plaintiffs' Counsel learned that Defendants made several key changes to the operation of their Restaurants that would have, arguably, impacted class and collective certification. Moreover, Plaintiffs' Counsel learned that these changes were made as a direct result of the filing of the *Reynolds* Action. Notwithstanding these changes, on June 2, 2021, Plaintiff Nulph filed her motion for class and collective certification. Rather than have Defendants file their opposition briefs to these motions, the Parties agreed to engage in omnibus settlement discussions.

The Parties engaged in a mediation session before the Hon. Diane M. Welsh (Ret.) of JAMS on September 15, 2021.  Although that session lasted all day, no resolution was reached.

Rather, due to Defendants claiming financial hardship resulting from their declining financial position, Plaintiffs requested certain financial information be produced and agreed to continue the mediation on Saturday, September 18th.  Again, that session lasted all day albeit with an accord reached at the end of the day.  It took many more months to hammer out a proposed memorandum of understanding.  Even then, the dollar figure reached during mediation was upwardly adjusted due to discovery of a discrepancy in total hours worked by Tipped Employees during the Class Period.  Ultimately, a memorandum of understanding was finally signed on December 22, 2021.  Then, the Parties began negotiating the terms of the fulsome Settlement, a version of which was presented to the Court in February 2022.

On July 7, 2022, this Court issued a Memorandum and Order denying Plaintiffs' previous motion for preliminary approval of class and collective action settlement. ECF 137, 138. Therein, this Court found the terms of the Parties' Settlement, as previously submitted, did not warrant preliminary approval. ECF 137 at 1. Specifically, this Court found the Settlement inappropriately "tie[d] the choice to opt in to [an FLSA collective] to the right to participate in a class settlement" without providing class members "anything extra for releasing [] FLSA claims." *Id.* at 1, 7. This Court also raised questions about the use of a "claims-made process," but, while not resolving the issue, noted "there is some authority that supports [the Parties'] proposed use of a claims made process here." *Id.* at 10–11.  No other issue with the Settlement was raised by this Court.

The Parties reviewed this Court's July 7, 2022 Memorandum and Order and revised the terms of the Settlement to address this Court's stated concerns.  Specifically, under the revised Settlement Agreement currently before the Court, all Tipped Employees members who do not exercise their opt-out rights under Rule 23 will receive a settlement payment in consideration for the release of their state-law claims. Tipped Employees may also voluntarily opt into the FLSA

Collective and, if they do, they will receive an additional payment in consideration for the release of their FLSA claims.

Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for Plaintiffs believe that the proposed settlement is fair, reasonable, and is in the best interest of Plaintiffs and the Tipped Employees. This is especially true in light of all known facts and circumstances, including the severe economic hardship under which Defendants have operated. *See, e.g.,* Redacted Declaration of Kirk Ruoff ("Ruoff Decl."), filed with this Court on February 7, 2022 (ECF 123).[4]

Although Defendants deny liability, they likewise agree that settlement is in the Parties' best interests. For those reasons, and because the Settlement is contingent on Court approval, the Parties submit their revised Settlement Agreement to the Court for its review.

## AMENDED COMPLAINT

Pursuant to the terms of the Settlement Agreement, the Parties agreed to file an omnibus Amended Complaint which effectively consolidates the claims of Plaintiffs Reynolds, Nulph, and Barba and places all of those claims before this Court. Importantly, and only for purposes of settlement, Defendants have agreed to waive any argument that the Court lacks personal jurisdiction over all the Defendants. Accordingly, the Parties respectfully request that the Court accept the Amended Complaint – which was filed with this Court on February 7, 2022 (ECF 124) – in accordance with the terms of the Settlement Agreement.

---

[4] Per Defendants, the unredacted version of the Ruoff Declaration contains Defendants' sensitive commercial non-public information.  Defendants have represented to Plaintiff's Counsel that an unredacted version is available for the Court's review.

## SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

The key components of the Settlement are set forth below, and a complete description of

its terms and conditions are contained in the Settlement Agreement.

**A.**     **The Proposed Rule 23 Class and FLSA Collective**

Through the Settlement Agreement, the Parties stipulate to the certification of the Rule 23

Class. The Rule 23 Class is comprised of two subclasses:

The PA Class:

> Any current or former Tipped Employees who were employed by
> Defendants at a Turning Point restaurant in Pennsylvania at any time from
> May 19, 2017 through August 31, 2021 to which Turning Point did not pay
> the full state minimum wage because it claimed a tip credit for that
> employee pursuant to applicable state laws, including the PMWA. Excluded
> from this class are all Tipped Employees who submit a timely and valid
> Request for Exclusion.

The NJ Class:

> Any current or former Tipped Employees who were employed by
> Defendants at a Turning Point restaurant in New Jersey at any time from
> May 19, 2017 through August 31, 2021 to which Turning Point did not pay
> the full state minimum wage because it claimed a tip credit for that
> employee pursuant to applicable state laws, including the NJWHL.
> Excluded from this class are all Tipped Employees who submit a timely and
> valid Request for Exclusion.

The Parties further stipulate through the Settlement Agreement to the certification of the FLSA

Collective, defined as:

> Any current or former Tipped Employees who elect to opt-in to the
> Litigation who were employed by Defendants at a Turning Point restaurant
> in Pennsylvania or New Jersey at any time from May 19, 2017 through
> August 31, 2021 to which Turning Point did not pay the full federal
> minimum wage because it claimed a tip credit for that employee pursuant
> to Section 203(m) of the FLSA.

Should the Court grant final approval of the Settlement, by operation of law and as set forth in

Section 5.1(A) of the Settlement Agreement: (a) all members of the Rule 23 Class who do not

timely submit a Request for Exclusion (attached as **Exhibit E** to the Settlement Agreement) shall be deemed to have released any and all applicable state wage-related claims asserted in the Amended Complaint; and (b) all members of the FLSA Collective shall be deemed to have released any and all federal wage-related claims asserted in the Amended Complaint.

## B.    The Proposed Class Notice

The Settlement Agreement provides for dissemination of a Class Notice. The Class Notice will provide Tipped Employees with all pertinent information regarding the Settlement as well as the contact information for Class Counsel. After entry of the Preliminary Approval Order, Defendants shall provide the Claims Administrator with a list of all Tipped Employees in electronic form, containing the following information for Plaintiffs and for each Tipped Employee: name, last known address, last known telephone number(s), last known email address(es), Social Security Number, hourly rate of pay paid by Defendants (the "cash wage" paid pursuant to Section 203(m) of the FLSA), number of hours recorded in Defendants' timekeeping system, the dates employed by Defendants at any time during the Class Period, and any other required deductions set forth within Defendants' payroll records (*e.g.*, wage garnishments, tax liens, child support). *See* SA § 4.6.

No more than fourteen (14) days after receiving the class list, the Claims Administrator will mail the Notice Packet via First Class Mail to each Tipped Employee. *See* SA § 4.10. The Notice Packet shall include the Class Notice (attached as **Exhibit A** to the Settlement Agreement). The Notice Packet shall, *inter alia*: (i) provide Estimated Settlement Payment amounts, divided into an Estimated Class Payment amount and an Estimated FLSA Collective Payment amount; (ii) inform Tipped Employees that, unless they opt out of the Rule 23 Class, they will automatically receive a  Class Payment; (iii) describe how Tipped Employees may opt into the FLSA Collective,

8

if they have not previously filed a Consent to Sue Form, and thereby receive an additional FLSA

Collective Payment; and (iv) advise the Tipped Employees whether Defendants' records indicate

their potential settlement payment is subject to any required deductions. Where an email address

is provided, the Claims Administrator will also send an email notifying the individual of the

proposed settlement. *Id.* Notably, the Claims Administrator will create a portal that will allow

Tipped Employees to submit a Claim Form online. Finally, Defendants have agreed to post the

Class Notice in each of their Restaurants. *See* SA § 4.10(H).

Upon sending of the Notice Packet, the Claims Administrator shall also establish a

settlement website, which will include the Settlement Agreement, relevant pleadings, a copy of

the Class Notice, any relevant Court orders regarding the Settlement, and a list of frequently asked

questions mutually agreed upon by the Parties. *See* SA § 4.10(F). The form and method of Class

Notice agreed to by the Parties satisfies all due process considerations and meets the requirements

of Federal Rule of Civil Procedure 23(e)(1)(B). The proposed Class Notice describes plainly: (i)

the terms and effect of the Settlement Agreement; (ii) the time and place of the Final Approval

Hearing; (iii) how the recipients of the Class Notice may object to the Settlement; (iv) the nature

and extent of the release of claims; (v) the procedure and timing for objecting to the Settlement;

and (vi) the form and methods by which a Tipped Employee may either participate in or exclude

themselves from the Settlement.

## C.    Monetary Terms

The proposed Settlement Amount is a non-reversionary cash payment of Seven Hundred

Ninety-nine Thousand Five Hundred Dollars ($799,500.00). *See* SA § 2.41. In accordance with

the Settlement Agreement, the Claims Administrator shall make deductions from the Settlement

Amount for court-approved attorneys' fees and reasonable litigation costs, fees, and expenses for

the Claims Administrator, and any court-approved Service Payments to the Plaintiffs, in recognition of the risks and benefits of their participation and substantial services they performed. *See* SA § 4.9(B)(1). Subject to redistribution to prevent individual windfall payments (SA § 4.9(B)(7)), after all applicable fees and expenses are deducted, 70% of the Settlement Amount will be allocated to Rule 23 Class members' state-law claims and 30% of the Settlement Amount will be allocated to FLSA Collective members' FLSA claims.  *See* SA § 4.1.

Should the Court grant final approval of the Settlement, Defendants shall pay the Settlement Amount after the Settlement becomes Final. *See* SA § 4.14(A).  Settlement Class Members shall receive their portion of the Settlement by check thereafter. *See* SA § 4.14(B). The payments made to the Settlement Class Members will be separated into two checks: (i) one for fifty percent (50%) will be allocated to the claims for unpaid wages, and (ii) one for fifty percent (50%) will be allocated to the claims for alleged liquidated damages, penalties, interest, and other relief. *See* SA § 4.14(C). Each check will clearly identify whether it is a check for (i) wages or (ii) liquidated damages/other relief. *Id.* The Claims Administrator will make all legally mandated payroll deductions prior to distributing the settlement payments to Settlement Class Members. Importantly, the Class Notice sent to Tipped Employees will indicate if Defendants' records note that any further deduction is required (*e.g.*, garnishments, tax liens, child support). *See* SA § 2.23.

The Claims Administrator will calculate the Estimated Class Payment, Estimated FLSA Collective Payment, and combined Estimated Settlement Payment, to be included in the Notice Packet, as follows: (1) deduct from the Settlement Amount the anticipated amount of attorneys' fees to be requested, plus estimated expenses of Plaintiffs' Counsel, the maximum Service Payment sought for the Plaintiffs, and the estimated fees and expenses of the Claims Administrator (the resulting number will be referred to as the "Estimated Net Settlement Amount"); (2) for each

10

Tipped Employee, the Claims Administrator will total the amount of tip credit taken by Defendants for all hours worked as a Tipped Employee during the Class Period (this number will be referred to as the "Estimated Individual Recovery Amount"); (3) the Estimated Individual Recovery Amounts for all Tipped Employees will then be added together by the Claims Administrator to determine the "Class Members' Total Recovery Amount," and the Estimated Net Settlement Amount will then be divided by the Class Members' Total Recovery Amount; (4) the Claims Administrator will then multiply the resulting fractional amount by a Class Member's Individual Recovery Amount to determine that Tipped Employee's "Estimated Settlement Payment"; and (5) the Claims Administrator will then multiply the Tipped Employee's Estimated Settlement Payment by 0.7 (*i.e.*, 70%) to obtain the Tipped Employee's "Estimated Class Payment" and by 0.3 (*i.e.*, 30%) to obtain the Tipped Employee's "Estimated FLSA Collective Payment." *See* SA § 4.9(A)(1–5).

Settlement Class Members shall have 180 days to negotiate their Settlement Check. The deadline to negotiate, along with the applicable release, will be included in the cover letter sent with the check. *See* SA § 4.14(D)(1–2). Any checks not negotiated within this time period shall be deemed void and subject to a *Cy Pres* Distribution. SA § 4.14(F)(2).

**D.     Dismissal and Release of Claims**

Upon the Settlement becoming Final, Rule 23 Class members shall be deemed to have forever released any and all applicable state wage and hour claims that were or could have been asserted in the Amended Complaint during the Class Period. *See* SA § 5.1(A)(1–2). Similarly, upon the Settlement becoming Final, any and all FLSA Collective members shall be deemed to have forever released any and all federal wage and hour claims that were or could have been

asserted in the Amended Complaint during the Class Period. *See* SA § 5.1(A)(3). These releases are described in the proposed Class Notice.

**E.     Proposed Schedule Following Preliminary Approval**

| EVENT | TIMING |
|---|---|
| Mailing of Class Notices | Within fourteen (14) calendar days after the Class Administrator receives the class list and the data required to perform the preliminary calculations (SA § 4.10 (A))<br><br>Shortly thereafter, the Claims Administrator will also send an email to any Tipped Employee for which Defendants provided that Tipped Employee's last known email address. The email shall also include a statement that the full Notice Packet has been mailed to the individual's last known address (SA § 4.10 (c)-(d)) |
| Deadline for Filing Objections to the Settlement | By the Bar Date (SA § 4.11) |
| Deadline for Submitting Requests for Exclusion from the Settlement | By the Bar Date (SA § 4.1(B)) |
| Final Approval Hearing | Between ninety (90) and one hundred twenty (120) days after entry of the Preliminary Approval Order (SA § 2.18) |

**ARGUMENT**

**A.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT**

The settlement of class/collective action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling

12

class action litigation, and it should therefore be encouraged"). As this Court aptly noted just last year:

> Preliminary approval of a proposed class action settlement is left to the discretion of the trial court. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998). "The fair, reasonable and adequate standard is lowered, and the court is required to determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies. . . ." *Nat. Football League*, 961 F. Supp. 2d 708, 714 (quoting another source). Nevertheless, "[p]reliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *Id.* Rather, it is "based on an examination of whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2)." *Wood v. Saroj & Manju Invs. Philadelphia LLC*, No. CV 19-2820-KSM, 2020 U.S. Dist. LEXIS 243700, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (citing Fed. R. Civ. P. 23(e)(1)(B)(i) and other sources).

*Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106-JDW, 2021 WL 1374607, *7 (E.D. Pa. April 12, 2021).

As set forth below, preliminary approval of this proposed Settlement is appropriate as it satisfies all criteria for preliminary approval. Accordingly, Plaintiffs request that the Court grant the requested relief.

### 1.    Standard for Approval of FLSA Settlements

The standard for approval of an FLSA collective action requires only a determination that the compromise reached "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See Brumley v. Camin Cargo Control, Inc.*, No. 2:08-CV-01798, 2012 WL 1019337 at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

"[I]n evaluating settlement agreements under the FLSA, district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*." *See In re Chickie's & Pete's Wage and Hour Litig.*, No. 12-CV-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (*citing Brown*

13

*v. TrueBlue, Inc.*, No. 1:10-CV-00514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013). Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a bona fide dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Lynn's Food Stores,* 679 F.2d at 1354. To determine if a settlement agreement is reasonable and fair, "courts generally proceed in two steps, first considering whether the agreement is fair and reasonable to the plaintiff-employees and, if found to be fair and reasonable, then considering whether it furthers or 'impermissibly frustrates' the implementation of the FLSA in the workplace." *Brumley*, 2012 WL 1019337 at *2.

It is not disputed that the Settlement Agreement resolves a bona fide dispute. Moreover, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate its implementation. Indeed, the Settlement furthers the purposes of the FLSA by providing Tipped Employees who opt into the FLSA Collective with substantial recovery for their unpaid wages. Because the Settlement facilitates the FLSA and is a fair and reasonable resolution of a bona fide dispute, it should be approved as reasonable.

## 2.     Standard for Approval of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. When a proposed class settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. Finally, there is a settlement approval or final fairness hearing. *See* Manual for Complex Litigation § 21.632-633 (4th ed. 2004).

The Third Circuit has stressed that the most relevant consideration is whether the proposed settlement is within a "range of reasonableness" in light of all costs and risks of continued

14

litigation; that is, the test is whether the proposed settlement is fair and reasonable under the circumstances. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 at 322 (3d Cir. 1998). To determine whether the settlement is fair, reasonable and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which was reaffirmed in *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016). These factors are:

1) The complexity, expense, and likely duration of the litigation;
2) the reaction of the class to the settlement;
3) the stage of the proceedings and the amount of discovery completed;
4) the risks of establishing liability;
5) the risks of establishing damages;
6) the risks of maintaining the class action through the trial;
7) the ability of the defendants to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 156-57. At the preliminary approval stage, a court need not address every factor, as "the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.,* 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the Parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Stated another way, preliminary approval is a "determination" of whether there "might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

In this Circuit, "[i]f the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Gaskin v. Pennsylvania*, 389 F. Supp.2d 628, 630 (E.D. Pa. 2005); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

Plaintiffs' Counsel believes the terms of the proposed settlement are fundamentally fair, reasonable, and adequate, especially when considering all the risks associated with litigating this matter further. In making its determination of these risks, the Court should give deference to the opinions of Class Counsel. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

### a.      Complexity, Expense, And Likely Duration Of The Litigation

This case has been diligently litigated by both sides. Significant work has been done, including but not limited to written discovery, review of documents produced, legal research and comparison of analogous cases, depositions including Rule 30(b)(6) depositions that lasted several days, analysis of payroll data, and participation in a mediation that lasted two full days with an experienced wage and hour mediator. Had this case not settled, class and collective certification briefing would have continued in the *Nulph* Action, the *Barba* Action would have been initiated, and the *Reynolds* Action would have had proceeded to discovery and briefing on decertification before commencing a jury trial. Accordingly, this factor warrants the granting of preliminary approval.

16

### b.      Reaction Of The Class To The Settlement

Class Notice has not yet been disseminated. Consequently, Tipped Employees have not yet had the opportunity to consider or opine on the Settlement. As such, Class Counsel will address this factor at the Final Approval Hearing. However, Plaintiffs support the Settlement.

### c.      Stage Of The Proceedings And The Amount Of Discovery Completed

As noted above, the Parties have engaged in significant discovery and fully briefed several issues. Indeed, as part of the mediation, Defendants produced certain payroll data and other financial information which allowed Plaintiffs to develop a comprehensive picture of the damages at issue, as well as Defendants' ability to pay. Further, the Parties participated in two all-day mediations before Judge Welsh (Ret.). The participation of Judge Welsh ensured that the settlement negotiations were conducted at arm's length and without collusion between the Parties. *See* Welsh Decl. ¶¶ 6–10; *see elso, e.g.*, *Bernhard v. TD Bank, N.A.*, No. 1:08-CV-04392, 2009 WL 3233541 at *1-2 (D.N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). For these reasons, this factor also weighs in favor of approval of the Settlement.

### d.      Risks Of Establishing Liability And Damages

The inquiries into the risks of establishing liability and damages "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Ikon Off. Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 319). Here, class certification and liability have been hotly contested issues. Moreover, as noted above, Defendants were in very real financial distress.

17

It is Class Counsel's considered opinion that settlement on the proposed terms at this juncture in the Litigation, given all the risks involved, is the most prudent course.

        e.        **Risks Of Maintaining The Class Action Through The Trial**

"The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement." *Harshbarger v. Penn Mut. Life Ins. Co.*, No. 12-CV-6172, 2017 WL 6525782 at *7 (E.D. Pa. Dec. 20, 2017). The risks associated with class certification increase the risk of maintaining the proposed classes, and therefore supports settlement. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (concluding that settlement was appropriate as there was "appreciable risk to the class members' potential for recovery").

Here, the Court has already denied class certification due to the "unique circumstances" involving Plaintiff Reynolds' hiring. There is no guarantee that certification in either the *Barba* Action or the *Nulph* Action would not have faced similar impediments. At this stage of the Litigation, the Parties were able to make an informed decision concerning the risks involved. The risks render settlement at this juncture the prudent course.

        f.        **Ability Of Defendants To Withstand A Greater Judgment**

For Plaintiffs, Defendants' inability to pay a larger sum was a significant factor in settling this Litigation. Based on Plaintiffs' Counsel's experience in litigating analogous cases against similar restaurants and given the effects of the COVID-19 pandemic, the restaurant industry is facing challenging times. During negotiations, Defendants expressed that, in addition to the restrictions imposed following the COVID-19 pandemic, Defendants have faced significant financial difficulty as their Restaurants have not yet reached full capacity due to labor shortages. In addition, Defendants' Restaurants only offer breakfast and lunch services and do not sell alcohol, which limits their profit margin. Because of Defendants' difficult financial situation, they have terminated a substantial number of employees and are not in compliance with their loan

18

covenants. *See* Ruoff Decl. at ¶ 3. Accordingly, "as it appears that defendants would not be able to withstand a greater judgment, resolution of this action through one settlement class benefits all plaintiffs by increasing the likelihood of collection." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304 (E.D.N.Y. 2015) (approving settlement of class of restaurant workers where defendants declared they could not withstand greater judgment). In short, continued litigation would run the dual risk of providing Plaintiffs and the Tipped Employees with a potentially unenforceable judgment and/or adversely affecting Defendants' ability to compete in the restaurant industry, which would have harmed all members of the Tipped Employees still employed by Defendants.

### g. Range of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *General Motors*, 55 F.3d at 806. Here, the proposed Settlement confers a substantial benefit on the Settlement Class Members, despite Defendants' financial hardship. Consequently, preliminary approval is warranted.

### h. The Permissive Factors Also Support Settlement

In *In re NFL,* the Third Circuit again noted that in reviewing a proposed settlement, a court should also – to the extent applicable – look at "several permissive and non-exhaustive factors" when evaluating a proposed settlement. *In re NFL,* 821 F.3d at 437. These factors also support preliminary approval. First, all Tipped Employees have the right to opt-out of this Settlement. *See* SA § 4.12. Second, all Rule 23 Class Members will receive a proportional share of the Settlement Amount based on the amount of alleged damages they specifically incurred (*e.g.*, the total tip credit taken by Defendants based on the number of hours they worked) in consideration for the release

19

of their state-law claims. Third, Rule 23 Class members are under no obligation to opt into the FLSA Collective or to release federal-law claims before receiving a payment under the Settlement. Fourth, the FLSA Collective opt-in procedure is straightforward, fair, and reasonable. By submitting a Claim Form, a Tipped Employee will become a FLSA Collective member and thus receive an additional, proportional share of the Settlement Amount based on the amount of alleged damages they specifically incurred (*e.g.*, the total tip credit taken by Defendants based on the number of hours they worked).

Further, the Settlement does not unduly grant preferential treatment to anyone. Instead, Plaintiffs are permitted to seek, subject to the Court's approval, a reasonable Service Payment that recognizes their efforts in prosecuting and resolving this Litigation and the risks associated with bringing this action. The Settlement Agreement permits the Plaintiffs to seek up to $5,000 each as a Service Payment. *See* SA § 4.18.  While justification for each request will be provided at the Final Approval Hearing, this Court has noted, "a service award of $5,000 is in line with similar awards approved in other collective/class actions in this district." *Mejia v. KVK-Tech, Inc.*, No. 19-cv-04841-JDW, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (collecting cases).

Finally, the provision regarding attorneys' fees is reasonable. Pursuant to the Settlement Agreement, prior to a Final Approval Hearing, Class Counsel will file a motion seeking an amount not to exceed thirty-five (35) percent of the Settlement Amount as a fee award, plus reimbursement of all reasonable litigation expenses incurred. This maximum amount Plaintiffs' Counsel can request is presumptively reasonable. Indeed, in *Mejia*, this Court approved a fee request of one-third, as it was in the middle of the range of awards of 20-45% for FLSA common fund cases in the Third Circuit. *Id.* at *4; *see also Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 534 (E.D. Pa. 2016). Importantly, this fee request is plainly documented in the proposed Class Notice. As such,

Class Counsel will be fully prepared to substantiate their final fee request after Settlement Class

Members have had an opportunity to opine on its propriety.

Thus, all applicable factors support preliminary approval of this proposed Settlement.

**B.      THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES**

**1.      The Rule 23 Class Should Be Certified As Provided For In The Settlement Agreement**

Plaintiffs request that the Court certify the proposed PA Class and NJ Class for settlement

purposes only. These proposed settlement classes plainly satisfy the four elements of Rule 23(a),

and one or more of the requirements of Rule 23(b). Importantly, sister courts in this Circuit have

routinely granted class certification for directly analogous tip credit notification claims. *See, e.g.,*

*Wintjen v. Denny's, Inc.,* No. 19-CV-00069, 2021 WL 5370047 (W.D. Pa. Nov. 18, 2021) (granting

class certification for alleged violations of PMWA regarding tip credit notification); *Casco v.*

*Ponzios RD, Inc.*, No. 16-2084, 2018 WL 2002787 (D. N.J. April 30, 2018) (granting class

certification for alleged violations of NJWHL regarding tip credit notification). Moreover,

Defendants do not oppose certification of the PA Class or NJ Class for settlement purposes only.

**2.      Rule 23(a) Requirements Are Satisfied**

To certify a class under Rule 23, a plaintiff must establish that the class meets each of the

four requirements of subsection (a) of the Rule. These four elements are referred to as (1)

numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *In re Corel Corp.*

*Secs. Litig.*, 206 F.R.D. 533, 539 (E.D. Pa. 2002). Here, all four elements are clearly satisfied.

**a.      23(a)(1) - "Numerosity"**

The proposed NJ Class and PA Class are sufficiently numerous. Rule 23(a)(1) requires that

the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. Here,

there are approximately 1,695 Tipped Employees in the NJ Class and 876 Tipped Employees in the PA Class. *See* Wells Decl. ¶ 64. The numerosity requirement is therefore amply satisfied.

        **b.**        **Rule 23(a)(2) – "Commonality"**

The proposed NJ Class and PA Class also satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357-360 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50. The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000).

Here, commonality exists because the Rule 23 Class members' claims are predicated on common core issues: (i) whether Defendants failed to satisfy the notice requirements of the tip credit; (ii) whether Defendants failed to ensure Tipped Employees earned the mandated minimum wage when taking the tip credit; and (iii) whether Defendants paid Plaintiffs and other Tipped Employees the tipped wage even when there was no hope that these employees could earn tips (*e.g.*, before the restaurant opened/after it closed to the public). As such, the Rule 23 Class raises common questions of law and fact which arise from a "common nucleus of operative facts" with respect to their claims against Defendants. *See In re Centocor, Inc. Secs. Litig. III*, No. 2:98-CV-00260, 1999 WL 54530 at *2 (E.D. Pa Jan. 27, 1999).

        **c.**        **Rule 23(a)(3) – "Typicality"**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23. Whereas commonality evaluates the sufficiency of the class,

typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. Dec. 15, 1994). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re NFL*, 821 F.3d at 428. As one district court in this Circuit aptly noted in granting class certification, "the principal questions presented by the suit go to [defendant's] corporate policies. The controversy here is whether those policies violate the PMWA and whether those policies were applied to plaintiff and other potential class members.*" Soles v. Zartman Constr., Inc.,* No. 4:13-CV-00029, 2014 WL 3557197 at *6 (M.D. Pa. July 18, 2014). That is precisely the case at hand—whether Defendants' corporate policies complied with applicable law regarding use of the tip credit and "whether those policies were applied to plaintiff and other potential class members." *Id.* As such, the Plaintiffs' claims are typical of the claims of members of the proposed classes.

### d. Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).

Here, adequacy is readily met, and Plaintiffs satisfy both prongs. First, Plaintiffs have no interests adverse or "antagonistic" to absent Rule 23 Class Members. Ms. Barba and Ms. Nulph seek to hold Defendants accountable for, among other things, allegedly failing to comply with the

tip credit notification requirements of Pennsylvania and New Jersey state wage and hour law. Further, Plaintiffs have demonstrated allegiance and commitment to the Litigation. As such, Plaintiffs' interests are perfectly aligned with the interests of the absent Rule 23 Class members, thereby meeting the first adequacy prong. Second, Plaintiffs' Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation – specifically including wage and hour actions. *See* Wells Decl. ¶¶ 77-85. Accordingly, the adequacy requirement is satisfied.

### e.    Rule 23(b) Requirements Are Satisfied Here

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997). Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 148 F.3d at 316. Here, Plaintiffs readily meet both requirements.

As the court in *Wintjen* noted*,* "the common (and claim determinative) issue for this case is the content of the tip credit notice [Defendant] provided to its" Tipped Employees. *Wintjen*, 2021 WL 5370047, *12. Stated another way, Rule 23 Class members' claims seek remedy of "common legal grievances" – namely, payment of minimum wages owed due to Defendants' impermissibly claiming a tip credit for all hours worked. Plaintiffs' claims present common operative facts and common questions of law that predominate this inquiry. Notably, the Third Circuit has remarked that it is "more inclined to find the predominance test met in the settlement

24

context." *In re NFL*, 821 F.3d at 434 (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).

Second, Rule 23 certification of the class must also be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23. Here, superiority is also met. "[A]s courts presiding over other wage and hour cases of this type have observed, 'there is little incentive for Plaintiffs to bring their claims individually because the amount of recovery, if any, would be very small. Class actions are particularly appropriate in such cases.'" *Wintjen*, 2021 WL 5370047, *15 (quoting *Koenig v. Granite City Food & Brewery, Ltd.*, No. 2:16-CV-01396, 2017 WL 2061408, *5 (W.D. Pa. May 11, 2017) (Kearney, J.)). Requiring all of Defendants' Tipped Employees to file individual lawsuits would needlessly waste judicial resources as each lawsuit would likely involve the same evidence concerning Defendants' alleged wrongdoing. Indeed, this proposed settlement effectively resolves three lawsuits. Accordingly, the Court should enter an order certifying the Rule 23 Class for settlement purposes only.

## C.     FLSA COLLECTIVE MEMBERS ARE SIMILARLY SITUATED

Members of the FLSA Collective are similarly situated to Plaintiffs. Indeed, all Plaintiffs – despite working in different locations (and different states) complain of the same basic federal wage violation – being required to perform excessive sidework and/or duties unrelated to their tipped occupation. As this Court has already granted conditional certification of that very claim for Tipped Employees in Pennsylvania (ECF 70), Plaintiffs respectfully submit that this Court should extend that ruling to cover Tipped Employees who worked in New Jersey. Indeed, discovery revealed that the Restaurants in New Jersey operated under the same basic parameters as those in Pennsylvania. Thus, all Tipped Employees are similarly situated in accordance with Section 216(b) of the FLSA.

Importantly, only FLSA Collective members will release their FLSA claims against Defendants. Such a release is entirely permissible as Section 216(b) only speaks to an action being maintained by individuals who file consent to sue forms with the court. Class Counsel respectfully submits that there is nothing in the legislative history of the FLSA that impedes a release of FLSA claims under such terms (especially in a case where there is judicial oversight).

**D.   THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED**

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise...." Manual for Complex Litigation, §21.312. "Notice by mail provides such 'individual notice to all members' in accordance with Rule 23(c)(2), and where the names and addresses of the class members are easily ascertainable, individual notice through the mail is 'clearly the 'best notice practical.'" *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116 at *6 (E.D. Pa. Sep. 26, 2017) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)).

Here, the Parties proposed notice plan includes direct mail, email (where available), website publication, and posting in Defendants' Restaurants. This comprehensive notice plan is intended to fully inform Tipped Employees of the Litigation, the proposed Settlement, and the information they require in order to make informed decisions about their rights. The proposed Class Notice is "simple and straightforward language and not legalese" and "the notice program is robust and is likely to ensure that all members receive notice of the claims and their rights with respect to the settlement." *Caddick*, 2021 WL 1374607, *2. Accordingly, this Court should approve the form of notice and the method of publication that Plaintiffs propose as they satisfy the due process requirements of Fed. R. Civ. P. 23.

**E.**     **CONNOLLY WELLS & GRAY, LLP, AND LYNCH CARPENTER, LLP SHOULD BE APPOINTED AS CLASS COUNSEL**

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel – Connolly Wells & Gray, LLP, and Lynch Carpenter, LLP – easily meet the requirements of Rule 23(g). Importantly, Plaintiffs are represented by counsel experienced in class action litigation including directly analogous cases. Indeed, these firms were recently appointed class counsel in a substantially similar matter. *Wintjen*, 2021 WL 5370047, *19. Moreover, Class Counsel's work in this case on behalf of the Plaintiffs and the proposed class and collective has been substantial. *See, e.g.,* Wells Decl. ¶¶ 10–37. As such, this Court should not hesitate in appointing Connolly Wells & Gray, LLP, and Lynch Carpenter, LLP as Class Counsel.

## CONCLUSION

The proposed Settlement is fair, reasonable, and adequate. Thus, for all the reasons set forth above, preliminary approval should be, respectfully, granted and the Preliminary Approval Order entered so as to permit the Parties to effectuate notice to the Tipped Employees.


Dated: July 29, 2022


                                        Respectfully Submitted,

                                        **CONNOLLY WELLS & GRAY, LLP**


                                        */s/ Gerald D. Wells, III*
                                        Gerald D. Wells, III
                                        Robert J. Gray
                                        101 Lindenwood Drive, Suite 225
                                        Malvern, PA 19355
                                        Telephone: 610-822-3700
                                        Facsimile: 610-822-3800
                                        rgray@cwglaw.com
                                        gwells@cwglaw.com

27

**LYNCH CARPENTER LLP**
Gary F. Lynch
Edward W. Ciolko
Elizabeth Pollock-Avery
1133 Penn Ave.
5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
gary@lcllp.com
eciolko@lcllp.com
elizabeth@lcllp.com

***Counsel for Plaintiffs and the Proposed Classes***