Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA MARY REYNOLDS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TURNING POINT HOLDING COMPANY, LLC, et al.,<br>Defendants. | Civil Action No.: 2:19-cv-01935-JDW |

## AMENDED JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Amended Joint Stipulation of Settlement and Release Agreement (the "*Settlement Agreement*"),[1] is entered into by and between Plaintiffs Christina Reynolds ("Reynolds"), Christina Nulph ("Nulph"), and Rosemary Barba ("Barba") (collectively, "*Plaintiffs*"), individually and on behalf of the *Rule 23 Class* and the *FLSA Collective* (as defined herein) and *Defendants* (as defined herein).

## RECITALS

WHEREAS, Plaintiff Reynolds commenced the litigation captioned as *Reynolds v. Turning Point Holding Company, LLC,* No. 19-01935 (E.D. Pa.) asserting various wage and hour claims against *Defendants* under Pennsylvania state law and the Fair Labor Standards Act ("FLSA") (the "*Reynolds Action*");

WHEREAS, Plaintiff Nulph commenced the litigation captioned as *Nulph v. Turning Point Holding Company, LLC,* No. 20-06089 (D.N.J.) asserting various wage and hour claims against *Defendants* under New Jersey state law and the FLSA (the "*Nulph Action*");

WHEREAS, Plaintiff Barba was preparing to commence litigation to be styled as *Barba v. Turning Point Holding Company, LLC* asserting various wage and hour claims against *Defendants* under Pennsylvania state law and the FLSA (the "*Barba Action*")[2];

WHEREAS, *Defendants* have vigorously contested *Plaintiffs'* claims from the outset, including *Plaintiffs'* assertions that the *Actions* may be maintainable as a class and/or collective action;

---

[1] Italicized words are defined herein.

[2] The *Reynolds Action*, *Nulph Action*, and *Barba Action* are collectively referred to herein as the "*Actions*."

1

WHEREAS, the *Parties* have engaged in significant discovery practice, including the taking and defending of multiple depositions;

WHEREAS, *Defendants* continue to deny all liability with respect to any and all claims alleged in the *Actions* and vigorously opposed *Plaintiff Reynolds'* motion for class and collective action certification and were likely to oppose such motions to be filed in the *Nulph Action* and *Barba Action* with equal vigor;

WHEREAS, the *Parties* participated in two all-day mediations before the Hon. Diane M. Welsh (Ret.), who is experienced in mediating wage and hour claims and other complex class actions;

WHEREAS, *Plaintiffs'* decision to settle was influenced in material respect by the general economic downturn in the restaurant industry and certain financial data provided by *Defendants*. Further, *Defendants* implemented new business practices that benefitted the *Tipped Employees* and would make the prosecution of the Actions as class actions difficult;

WHERAS, *Defendants* represented that they previously terminated a substantial number of employees and were not in compliance with their loan covenants due to the economic downturn in the restaurant industry caused by the COVID-19 pandemic;

WHEREAS, the *Parties* reached an agreement in principle for a settlement in these *Actions* only with the assistance of Judge Welsh and, even then, required further additional negotiations amongst the *Parties*;

WHEREAS, the *Parties* have reviewed the *Court's* July 7, 2022 Memorandum and Order in the *Reynolds Action* (ECF No. 137, 138) and have revised the *Settlement Agreement* to address this Court's concerns set forth in the July 7, 2022 Memorandum (ECF No. 137);

WHEREAS, the *Parties* have determined that individuals in the *Rule 23 Class* shall automatically receive a payment pursuant to the terms of this revised *Settlement Agreement*; and

WHEREAS, the *Parties* desire to promptly and fully resolve and settle with finality the *Actions* without further litigation;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

## 1.   **BACKGROUND**

Plaintiff Christina Mary Reynolds worked as a server at a restaurant operated by *Defendants* doing business as Turning Point in North Wales, Pennsylvania. Ms. Reynolds received part of her compensation in tips, and Defendants utilized a "tip credit" to satisfy its federal and state minimum wage obligations in paying *Plaintiff* and other *Tipped Employees*. Ms. Reynolds

claims *Defendants* (i) failed to satisfy the notice requirements of the tip credit provisions in federal and state law; (ii) failed to ensure *Tipped Employees* earned the mandated minimum wage when taking the tip credit; (iii) required *Tipped Employees* to use their tips to reimburse *Defendant* for cash shortages and customer walk-outs; (iv) required *Tipped Employees* to perform excessive/unrelated sidework; and (v) required its *Tipped Employees* to perform work while off the clock, resulting in unpaid overtime. *Defendants* vigorously deny each allegation and maintain that each and every Turning Point employee, including Ms. Reynolds, was properly paid at all times.

On May 2, 2019, *Plaintiff Reynolds* sued *Defendants* in the United States District Court for the Eastern District of Pennsylvania, Case No. No. 2:19-cv- 01935-JDW. On her own behalf, and on behalf of a putative class and putative collective, Ms. Reynolds asserted claims under the FLSA, the Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Payment and Collection Law ("WPCL"). *Plaintiff Reynolds* sought recovery of alleged unpaid wages, alleged unpaid or misappropriated gratuities, liquidated damages, and attorneys' fees and costs, as well as injunctive relief.

In response, Defendants sought dismissal of the New Jersey entities, which the Court granted after the *Parties* fully briefed the issue.

Thereafter, on August 16, 2019, *Plaintiff Reynolds* filed an amended complaint wherein she identified in the pleading's caption each of the individual entities that operated a Turning Point restaurant. Thereafter, on August 26, 2019, *Defendants* filed their Answer to this amended complaint in the *Reynolds Action*.

Upon entry of the scheduling order, the *Parties* began discovery in earnest. The *Parties* exchanged thousands of pages of documents. *Plaintiff Reynolds* deposed a Rule 30(b)(6) witness over the course of three separate days. *Defendants* also deposed *Plaintiff Reynolds* during this phase of discovery.

After completing an initial round of discovery, *Plaintiff Reynolds* moved for class and collective certification. The *Court* granted conditional collective certification regarding the issue of excessive/unrelated sidework. However, the *Court* denied class certification as to the issue of whether *Plaintiff Reynolds* and other *Tipped Employees* received proper tip credit notification due to *Plaintiff Reynolds'* unique onboarding situation when she was hired.

As a result of the *Court's* rulings, *Plaintiff Nulph* filed her action in the United States District Court for the District of New Jersey, asserting both FLSA and NJ state wage claims. After *Defendants'* filed their answer, the *Parties* began discovery in earnest in that matter. In that case, *Plaintiff Nulph* deposed a Rule 30(b)(6) witness, with this deposition being conducted over two separate days. *Defendants* also deposed *Plaintiff Nulph* during this phase of discovery. *Plaintiff Nulph* then moved for class and collective certification. The *Parties* sought and received a stay shortly before *Defendants'* opposition briefs to *Plaintiff Nulph's* motions for class and collective certification were due.

Thus, while the *Parties* engaged in discovery in the *Reynolds Action*, they also calendared

3

and prepared for a mediation session before the Hon. Diane M. Welsh (Ret.) of JAMS.

In addition, due to the *Court's* ruling in the *Reynolds Action* declining to grant class certification regarding the tip credit notification claim, *Plaintiffs* began to prepare to file the *Barba Action*. However, an agreement was reached with counsel for *Defendants* that the *Barba Action* would be held in abeyance pending the *Parties'* mediation efforts.

During discovery *Defendants* maintained that they have at all times complied with the FLSA and state wage laws. In discovery, it was revealed that beginning in May 2019, *Defendants* instituted additional practices that made prosecution of this action potentially difficult as a class action. These practices included providing the tip credit notice on the point-of-sale ("POS") screen, which the *Tipped Employees* acknowledge each day, asking *Tipped Employees* at the end of every shift if they "[spent] at least 85% of [their] time related to serving a guests needs," and paying servers the full minimum wage rate after the restaurant closes even if they are still attending to tables. It was revealed that these changes were a direct result of the filing of the *Reynolds Action.*

Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for *Plaintiffs* believe that the settlement with *Defendants* for the consideration of and on the terms set forth in this *Settlement Agreement* is fair, reasonable, and is in the best interest of *Plaintiffs* and *Settlement Class Members*, in light of all known facts and circumstances, including the risk of delay and defenses asserted by *Defendants*. Further, *Plaintiffs'* analysis was illuminated by the severe economic hardship *Defendants* were operating under that was conveyed to *Plaintiffs* during the mediation sessions. The *Parties* have also had the benefit of this *Court's* review and analysis of hybrid FLSA class settlements and have intentionally revised and structured the *Settlement* to address this *Court's* concerns stated in its July 7, 2022 Memorandum in the *Reynolds Action* (ECF No. 137).

Although *Defendants* deny the underlying allegations and all liability, they likewise agree that settlement is in the *Parties'* best interests. For those reasons, and because an effective release is contingent on *Court* approval, the *Parties* agree to submit their *Settlement Agreement* to the *Court* for its review.

## 2.   **DEFINITIONS**

2.1   ***Actions.*** The legal actions captioned *Reynolds v. Turning Point Holding Company, LLC,* No. 19-01935 (E.D. Pa.), *Nulph v. Turning Point Holding Company, LLC,* No. 20-06089 (D.N.J.), and the contemplated action *Barba v. Turning Point Holding Company, LLC*.

2.2   ***Bar Date.*** The date by which a *Tipped Employee* must submit any of the following to the *Claims Administrator*: (i) an objection; (ii) a *Request for Exclusion* from either the *PA Class* and/or the *NJ Class*; (iii) a *Claim Form* opting into the *FLSA Collective*; and/or (iv) a declaration contesting the validity of the *Claims Administrator's* calculations regarding that individual's *Estimated Settlement Payment*. The Parties agree that the *Bar Date* shall be sixty (60) days after the mailing of the Notice Packet.

2.3   ***CAFA.*** The Class Action Fairness Act.

2.4    ***Claim Form.*** The form substantially in the form attached hereto as Exhibit D that shall be mailed with the *Notice Packet* to *Tipped Employees*. Where appropriate, the *Claim Form* shall include the form or language to substitute for Department of Treasury Internal Revenue Service Form W-9, Request for Taxpayer Identification Number and Certification.

2.5    ***Claims Administrator.*** The *Parties* agree to utilize the third-party provider who facilitated notice in the *Reynolds Action,* RG2 Claims Administration LLC, a claims-administration firm capable of providing appropriate and timely administrative assistance in administering the settlement of the *Actions*.

2.6    ***Class Counsel.*** Connolly Wells & Gray, LLP and Lynch Carpenter LLP.

2.7    ***Class Notice.*** The notice substantially in the form of Exhibit A to be directed to *Tipped Employees*. The purpose of the *Class Notice* is to inform *Tipped Employees* of the resolution of the *Actions* and the material terms of this *Settlement Agreement*.

2.8    ***Class Period.*** May 19, 2017 through August 31, 2021.

2.9    ***Amended Complaint.*** The amended complaint filed in the *Reynolds Action* on February 7, 2022, ECF No. 124.

2.10   ***Class Payment.*** The portion of an individual *Settlement Payment* that a *Rule 23 Class* member will receive pursuant to the *Settlement Agreement* for the release of state law claims.

2.11   ***Court.*** The United States District Court for the Eastern District of Pennsylvania.

2.12   ***Cy Pres Distribution.*** Any and all funds that, pursuant to the terms of this *Settlement*, require distribution to a *cy pres* recipient(s) pursuant to Section 4.15 of this *Settlement Agreement.*

2.13   ***Defendants.*** Turning Point Holding Company, LLC, Turning Point of Pennsylvania, LLC, Turning Point of New Jersey, LLC, Turning Point of North Wales, LLC, Turning Point of Blue Bell, LLC, Turning Point of Warrington, LLC, Turning Point of Bryn Mawr, LLC, Turning Point of Newtown, LLC, Turning Point of Media, LLC, Turning Point of Doylestown, LLC, Turning Point of Brick, LLC, Turning Point of Hoboken, LLC, Turning Point of Holmdel, LLC, Turning Point of Little Silver, LLC, Turning Point of Long Branch, LLC, Turning Point of Manalapan, LLC, Turning Point of Westfield, LLC, Turning Point of Cherry Hill, LLC, Turning Point of Marlton, LLC, Turning Point of Moorestown, LLC, Turning Point of Princeton, LLC, Turning Point of Sea Girt, LLC, Turning Point of Toms River, LLC.

2.14   ***Defendants' Counsel.*** Cozen O'Connor.

2.15   ***Effective Date.*** The first day after the *Settlement* becomes *Final*.

5

2.16   ***Estimated FLSA Collective Payment.*** "Estimated FLSA Collective Payment" will have the meaning set forth in Section 4.9.

2.17   ***Estimated Class Payment.*** "Estimated Class Payment" will have the meaning set forth in Section 4.9.

2.18   ***Estimated Settlement Payment.*** "Estimated Settlement Payment" will have the meaning set forth in Section 4.9.

2.19   ***Expiration Period.*** 180 days after the mailing of the *Settlement Payments* to the *Settlement Class Members*.

2.20   ***Final.*** With respect to any judicial ruling or order, an order that is final for purposes of 28 U.S.C. § 1291, and (a) for which the time has expired to file an appeal, motion for reconsideration or clarification, motion for re-argument, motion for rehearing, petition for a writ of certiorari or other writ ("*Review Proceeding*") with respect to such judicial ruling or order with no such *Review Proceeding* having been filed; or (b) if a *Review Proceeding* has been filed with respect to such judicial ruling or order, (i) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (ii) such *Review Proceeding* has been denied or dismissed with no further right of review.

2.21   ***Final Approval Hearing.*** The hearing scheduled by the *Court* to decide whether to approve the *Settlement* as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23. The parties agree to attempt to have *Final Approval Hearing* scheduled between 90 and 120 days after entry of the *Preliminary Approval Order*, so as to provide adequate time for notice to the *Tipped Employees*.

2.22   ***Final Approval Order.*** The document substantially in the form attached hereto as Exhibit C, which will be submitted to the *Court* by the *Parties* to seek (1) approval of this *Settlement Agreement* on the terms provided herein (or as the same may be modified by subsequent mutual agreement of the *Parties* subject to approval of the *Court*), adjudging such terms to be adequate, fair and reasonable, and in the best interests of *Plaintiffs* and *Tipped Employees*; (2) certification of the *Rule 23 Class* and *FLSA Collective* for settlement purposes only; (3) approval of *Class Counsel's* application for an award of their fees, costs and expenses; (4) approval of *Class Counsel's* application for a *Service Payment* to *Plaintiffs*; and (5) dismissal of the *Reynolds Action* with prejudice.

2.23   ***Final Effective Date.*** The date on which the *Settlement* becomes *Final* and all *Settlement Conditions* have either been satisfied or waived in accordance with this *Settlement Agreement*.

2.24   ***FLSA Collective.*** *Plaintiffs* and all *Tipped Employees* who affirmatively opt-into this *Action* pursuant to Section 216(b) of the FLSA by submitting a *Claim Form* to the *Claims Administrator* prior to the *Bar Date.* Also included in the *FLSA Collective* are all individuals who have previously filed a consent form with the *Court* indicating they wish to be part of the *Reynolds Action,* unless they affirmatively elect to withdraw their previously filed consent to sue form with the *Court*.

6

**2.25**     ***FLSA Collective Payment.*** The portion of an individual *Settlement Payment* that an *FLSA Collective* member will receive pursuant to the *Settlement Agreement* for the release of FLSA claims.

**2.26**     ***Litigation.*** The legal actions captioned *Reynolds v. Turning Point Holding Company, LLC,* No. 19-01935 (E.D. Pa.), *Nulph v. Turning Point Holding Company, LLC,* No. 20-06089 (D.N.J.), and the forthcoming action *Barba v. Turning Point Holding Company, LLC.* The terms *Litigation* and *Actions* shall be used interchangeably herein.

**2.27**     ***Notice Packet.*** The (i) *Class Notice* mailed to *Tipped Employees* in accordance with the *Settlement Agreement*; (ii) the *Estimated Settlement Payment* for the individual *Tipped Employee* to whom the *Class Notice* was mailed, including the *Estimated Class Payment* and the *Estimated FLSA Collective Payment*; and (iii) the required deductions, if any, set forth within *Defendants'* payroll records (*e.g.*, garnishments, tax liens, child support). The *Notice Packet* sent via U.S. mail shall also include a *Claim Form* and a *Request for Exclusion* form.

**2.28**     ***Notice Period.*** The period of time from the date the *Claims Administrator* mails the *Notice Packet* through the *Bar Date.*

**2.29**     ***NJ Class.*** All former and current *Tipped Employees* of *Defendants* who worked in New Jersey at any time during the *Class Period* at one or more restaurants operating under the brand "Turning Point" who have not filed a *Request for Exclusion* prior to the *Bar Date.*

**2.30**     ***PA Class.*** All former and current *Tipped Employees* of *Defendants* who worked in the Commonwealth of Pennsylvania at any time during the *Class Period* at one or more restaurants operating under the brand "Turning Point" who have not filed a *Request for Exclusion* prior to the *Bar Date.*

**2.31**     ***Parties.*** *Plaintiffs* and *Defendants* and, in the singular, "Parties" refers to any of them, as the context makes apparent.

**2.32**     ***Plaintiffs.*** The named plaintiffs in these *Actions*, Christina Mary Reynolds, Christina Nulph and Rosemary Barba.

**2.33**     ***Plaintiffs' Counsel.*** Connolly Wells & Gray, LLP and Lynch Carpenter LLP.

**2.34**     ***Preliminary Approval Order***. The document substantially in the form attached hereto as Exhibit B, which will be submitted to the *Court* by the *Parties* to seek (a) preliminarily approval of this *Settlement Agreement*; (b) dissemination of *Class Notice*; (c) approval of the proposed form of *Class Notice*; (d) certification of a Fed. R. Civ. P. 23(b)(3) class for settlement purposes only; (e) certification of an FLSA collective for settlement purposes only; (f) appointment of *Plaintiffs* as class representatives and the law firms Connolly Wells & Gray, LLP and Lynch Carpenter LLP as *Class Counsel*; and (g) a finding that the proposed manner of serving the *Class Notice* to the *Tipped Employees* is the best notice practicable under the circumstances.

7

**2.35**   ***Released Persons.*** *Defendants* and all of their current and former officers, directors, owners, employees, agents, contractors, representatives, attorneys, subsidiaries, parents, affiliates, shareholders, investors, consultants, advisors, predecessors, successors, divisions, insurers, vendors, related parties, or any entity in which they have a controlling interest.

**2.36**   ***Request for Exclusion.*** The document substantially in the form attached hereto as Exhibit E, which will be mailed with the Notice Packet wherein a *Tipped Employee* who worked for *Defendants* during the *Class Period* and would otherwise be a member of the *NJ Class* and/or *PA Class* requests to be excluded from the terms of this *Settlement*.

**2.37**   ***Restaurants.*** The restaurant establishments operated by *Defendants* and doing business as "Turning Point" in either the Commonwealth of Pennsylvania and/or the State of New Jersey during the *Class Period*.

**2.38**   ***Review Proceeding.*** "Review Proceeding" will have the meaning set forth in Section 2.19.

**2.39**   ***Rule 23 Class.*** *Plaintiffs* and all members of the *NJ Class* or *PA Class*.

**2.40**   ***Service Payment.*** The amount to be approved by the *Court* for payment to Plaintiffs Christina Mary Reynolds, Christina Nulph and Rosemary Barba in recognition for their efforts in assisting in the prosecution of this *Action*. The *Parties* stipulate and agree that *Plaintiffs* shall not seek a *Service Payment* in excess of $5,000.00 for each of these individuals based upon their work and contribution to this *Litigation*. The basis for each individual *Service Payment* shall be set forth in *Plaintiffs'* motion for final approval.

**2.41**   ***Settlement.*** The resolution of the *Action* pursuant to the agreement of the *Parties* on the terms and conditions as set forth in this *Settlement Agreement.*

**2.42**   ***Settlement Amount.*** The $799,500.00 payment that *Defendants* will pay to settle the *Actions* as described in this *Settlement Agreement*, inclusive of *Class Counsel's* fees and costs, the *Service Payment*, and the *Claims Administrator's* fees and expenses. The *Settlement Amount* may remain in *Defendants'* general funds until required to be provided to the *Claims Administrator* for distribution pursuant to Section 4. Except as set forth in this *Settlement Agreement*, *Defendants* may not be called upon or required to contribute additional monies above the *Settlement Amount* under any circumstances whatsoever. Under no circumstances whatsoever shall any portion of the *Settlement Amount* revert to *Defendants.*

**2.43**   ***Settlement Agreement.*** This *Settlement Agreement*, including any modifications or amendments adopted pursuant to Section 8.14.

   ***Settlement Check.*** Checks issued to *Settlement Class Members* in the amount of their individual *Settlement Payment*. Each *Settlement Check* shall contain release language on its back in conformity with Section 4.14.

2.44   ***Settlement Class Member.*** Any *Rule 23 Class* member or *FLSA Collective* member.

2.45   ***Settlement Conditions.*** Each of conditions and obligations set forth in Section 3 of this *Settlement Agreement* that must either be satisfied or waived in writing by the Party entitled to the benefit of the condition or obligation.

2.46   ***Settlement Payment.*** The payment made to an individual *Settlement Class Member* for their corresponding *Released Claims* under the *Settlement*.

2.47   ***Tipped Employee.*** Any individual employed by *Defendants* during the *Class Period* at one or more of *Defendants' Restaurants* where *Defendants* did not pay that individual the full federal and/or state minimum wage because *Defendants* claimed or attempted to claim a "tip credit" for that employee pursuant to Section 203(m) of the FLSA and/or applicable state laws, including the PMWA and/or NJWHL. Such employees include servers, baristas, and/or bussers.

3.   **SETTLEMENT CONDITIONS**

The *Parties* stipulate and agree that each of the *Settlement Conditions* set forth in this Section is a material term. Except as otherwise provided in this *Settlement Agreement*, the *Parties* will use reasonable efforts to cause each of the following *Settlement Conditions* to occur and will support approval of the *Settlement* before the *Court*.

3.1   ***Defendants*** **providing a Declaration.** *Defendants* shall provide to *Plaintiffs' Counsel* a declaration detailing the distressed financial condition of *Defendants* as a result of the pandemic and mandated government actions, including the fact that during this time they had terminated a substantial number of employees and were not and still continue not to be in compliance with their loan covenants. This declaration shall be filed with the *Court* as part of the *Parties'* motion for preliminary approval, with select, relevant portions redacted and filed under seal if necessary.

The *Parties* agree that *Defendants'* previous provision of the Declaration of Kirk Ruoff, which was executed on February 3, 2022 and filed with the *Court* on February 7, 2022 (ECF No. 123), satisfies *Defendants'* obligations under this Section 3.1.

3.2   ***CAFA*** **Notice**. At their own expense, *Defendants* shall provide any notice required under *CAFA* regarding the *Settlement*.

3.3   **Preliminary Approval of *Settlement Agreement* by the *Court*.** As soon as practicable, but no later than August 1, 2022, the *Parties* will submit this *Settlement Agreement* (including all exhibits) to the *Court* for preliminary approval and will jointly request entry of a *Preliminary Approval Order* substantially in the form attached hereto as Exhibit B.

3.4   ***Court*** **accepting *Amended Complaint*.** As part of the motion for preliminary approval, the *Parties* shall seek *Court* approval of the *Amended Complaint*, previously filed with the *Court* on February 7, 2022 (ECF No. 124), acting as the operative complaint in this *Litigation.* For purposes of effectuating this proposed settlement only, *Defendants* consent

to the *Court* having personal jurisdiction over all *Defendants* and the claims set forth in the *Amended Complaint*. The *Parties* shall work cooperatively and take all steps necessary for the *Nulph Action* to remain administratively closed during the pendency of this proposed settlement.

**3.5**     **Certification of Classes and Collective.** The *Court* shall grant certification of the *FLSA Collective* and the *NJ Class* and *PA Class*, for the period May 19, 2017 through August 31, 2021. For settlement purposes only, and to effectuate this *Settlement Agreement*, *Defendants* will not object to certification set forth herein.

**3.6**     **Certification by the *Claims Administrator* of the Total Hours.** Pursuant to Section 4.6, the *Claims Administrator* shall either (i) certify that no adjustment to the *Settlement Amount* is necessary or (ii) confirm that an adjustment is necessary due to a deviation in the *Total Hours.* Such a certification shall occur at least ten (10) days before the *Final Approval Hearing.* Said certification can be accomplished through notifying *Class Counsel* and *Defendants' Counsel.*

**3.7**     **Entry of *Final Approval Order* by the *Court*.** The *Parties* will jointly request that the *Court* schedule a *Final Approval Hearing* between 90 and 120 calendar days after entry of the *Preliminary Approval Order*. At the *Final Approval Hearing*, the *Parties* will jointly move for entry of a *Final Approval Order*, substantially in the form attached hereto as Exhibit C.

**3.8**     ***Defendants* Paying the *Settlement Amount*.** No later than three (3) business days after the *Final Approval Order* becomes *Final*, *Defendants* shall pay the *Settlement Amount* to the *Claims Administrator*.

**3.9**     ***Final Approval Order* Becoming *Final*.** If the *Court* denies approval of any material term of the *Settlement*, whether initially, or if a *Review Proceeding* has been instituted, then after the conclusion of any *Review Proceeding*, any *Party* may terminate the *Settlement Agreement* under Section 7. If the *Court* does not enter the *Final Approval Order* or if the *Final Approval Order* does not become *Final* then any *Party* may terminate this *Settlement Agreement* pursuant to Section 7.

**4.**     <u>**TERMS OF SETTLEMENT**</u>

**4.1**     **Settlement Amount.** *Defendants* will pay the *Settlement Amount*, which includes *Class Counsel's* fees and costs as awarded by the *Court*, any and all *Service Payments*, and the *Claims Administrator's* fees and expenses under the *Settlement Agreement*. Also being paid from the *Settlement Amount* will be all *Rule 23 Class* members' state-law claims and all *FLSA Collective* members' FLSA claims. In return for the *Settlement Amount*, *Defendants* will obtain (among other things) the releases described in Section 5.  In no event shall *Defendants* be obligated to contribute any monies in excess of the *Settlement Amount* except as specifically provided in this *Settlement Agreement*.

**4.2**     **Class Certification.** In connection with preliminary and final approval of the proposed *Settlement*, *Plaintiffs* will, through *Class Counsel*, seek orders (preliminary and final,

10

respectively) certifying the *NJ Class* and *PA Class* pursuant to Fed. R. Civ. P. 23(b)(3). The *Plaintiffs* will also seek certification of the *FLSA Collective*.

4.3 **Preliminary Approval.** The *Parties* will use reasonable efforts to enable the *Plaintiffs* to file a motion with the *Court* for the issuance of a *Preliminary Approval Order*, substantially in the form attached hereto as Exhibit B, which, among other things, will (a) preliminarily approve this *Settlement Agreement*; (b) direct the time and manner of the *Notice Packet* to be served upon the *Tipped Employees*; (c) find that the proposed form of *Class Notice* fairly and adequately (i) describes the terms and effect of this *Settlement Agreement*, (ii) provides notice to the *Tipped Employees* of the time and place of the *Final Approval Hearing*, (iii) describes how *Tipped Employees* may opt into the *FLSA Collective*, and (iii) describes how the recipients of the *Class Notice* may object to or request to be excluded from the *Rule 23 Class*; and (d) find that the proposed manner of serving the *Class Notice* to the *Tipped Employees* is the best notice practicable under the circumstances.

4.4 **Cooperation.** The *Parties* will, in good faith, take reasonable steps to (a) secure expeditious entry of the *Preliminary Approval Order* by the *Court*; (b) seek a date for the *Final Approval Hearing* between 90 and 120 days calendar days after entry of the *Preliminary Approval Order*; and (c) and seek entry of the *Final Approval Order*.

4.5 **Retention of *Claims Administrator*.** The *Claims Administrator* will be responsible for the claims-administration process and distribution of the *Class Notice* and *Settlement Payments* as provided herein. *Defendants* will cooperate with the *Claims Administrator* and assist it in any reasonable way possible in administering this *Settlement Agreement*. *Claims Administrator* fees are to be paid out of the *Settlement Amount*. The *Claims Administrator* will provide *Class Counsel* and *Defense Counsel* with a final bill of its fees no later than ten (10) days before the *Final Approval Hearing*.

4.6 **Class Information.** Within fourteen (14) calendar days after the *Court* enters a *Preliminary Approval Order*, *Defendants* will provide the *Claims Administrator* with a list, in electronic form, containing the following information for *Plaintiffs* and for each *Tipped Employee*: name, last known address, last known telephone number(s), last known email address(es), Social Security Number, hourly rate of pay paid by *Defendants* (the "cash wage" paid pursuant to Section 203(m) of the FLSA), the number of hours recorded in *Defendants'* timekeeping system during the *Class Period,* and the dates employed by *Defendants. Defendants* shall also provide any deductions to a *Tipped Employee's* wages that are maintained in its records and were current as of the end of the *Class Period*, such as wage garnishments, tax liens, and child support. At the same time, *Defendants* will also provide *Class Counsel* with a list, in electronic form, containing the following information for each *Tipped Employee* during the *Class Period*: name, last known address, and dates employed by *Defendants*. The *Claims Administrator* will not use such information for any purpose other than to administer the *Settlement*. *Class Counsel* agrees that the class information as described in this paragraph shall not be used in the future in any way (including the prosecution of claims) against *Defendants. The Parties* stipulate and agree that they will each cooperate and use their best efforts to provide the *Claims Administrator* any information the *Claims Administrator* requests in order to facilitate its duties and obligations set forth in this *Settlement Agreement*.

(A) **Total Hours**. *Defendants* have represented that during the *Class Period*, they claimed a "tip credit" for 1,302,239 hours worked by the *Tipped Employees*. Should during the course of administering this *Settlement*, it be determined that the amount of actual hours *Defendants* claimed a "tip credit" for deviates by three percent (3%) or more from *Defendants'* representation, the *Settlement Amount* shall be adjusted on a "dollar for dollar" basis.

4.7 **Individuals who opted into *Reynolds Action*.** Individuals who have previously opted into the *Reynolds Action* shall be considered *FLSA Collective* members by virtue of their previous consent to join. No further action by these individuals shall be necessary for them to receive their *FLSA Collective Payment*. Should an individual who has previously opted into the *Reynolds Action* not wish to continue to be a member of the *FLSA Collective*, he or she may withdraw their consent to join form by notifying *Class Counsel* of their intentions in writing.

4.8 *Plaintiffs*. The *Plaintiffs* shall each be considered both *Rule 23 Class* members and *FLSA Collective* members by virtue of their signing this *Settlement Agreement*. No further action by these individuals shall be necessary for them to receive their *Settlement Payment*.

4.9 **Calculation of *Settlement Payments* for *Plaintiffs* and *Settlement Class Members*.**

(A) ***Estimated Settlement Payment.*** The *Notice Packet* will contain an "*Estimated Class Payment*" and an "*Estimated FLSA Collective Payment*" for the individual *Tipped Employee* to whom it was mailed. The *Estimated Class Payment* and *Estimated FLSA Collective Payment* together equal the individual's *Estimated Settlement Payment*. The *Claims Administrator* will calculate these estimated payments as follows:

(1) The *Claims Administrator* will deduct from the *Settlement Amount* (i) the anticipated amount of attorneys' fees to be requested (35% of the *Settlement Amount*), plus estimated expenses of *Plaintiffs' Counsel*, (ii) the maximum *Service Payment* sought for the Plaintiffs, and (iii) the estimated fees and expenses of the *Claims Administrator*. The resulting number will be referred to as the "*Estimated Net Settlement Amount*."

(2) For each *Tipped Employee*, the *Claims Administrator* will total the amount of tip credit taken by *Defendants* for all hours worked as a *Tipped Employee* during the *Class Period*. For example, if an individual was paid $2.83 per hour, resulting in *Defendants* taking a tip credit of $4.42 per hour, and that employee worked 100 hours during the *Class Period*, that individual *Tipped Employee* would be owed $442.00. This number will be referred to as the "*Estimated Individual Recovery Amount*."

(3) The *Estimated Individual Recovery Amounts* for all *Tipped Employees* will then be added together by the Claims Administrator to determine the "*Estimated Total Recovery Amount*." The *Estimated Net Settlement Amount*

will then be divided by the *Estimated Total Recovery Amount*.

(4)     The *Claims Administrator* will then multiply the resulting fractional amount by each *Tipped Employee's Estimated Individual Recovery Amount* to determine that *Tipped Employee's* "*Estimated Settlement Payment*."

(5)     The *Claims Administrator* will then multiply the *Tipped Employee's Estimated Settlement Payment* by 0.7 (i.e., 70%) to obtain the *Tipped Employee's* "*Estimated Class Payment*" and by 0.3 (i.e., 30%) to obtain the *Tipped Employee's* "*Estimated FLSA Collective Payment.*"

(6)     The *Class Notice* shall inform *Tipped Employees* that they need not take any action in order to automatically receive 70% of their *Estimated Settlement Payment,* provided they remain members of the *Rule 23 Class*, and that such payment shall constitute payment for the release of their state law claims.

(7)     Thus, for a *Tipped Employee* to receive 100% of their *Estimated Settlement Payment* (less applicable deductions set forth in this *Settlement Agreement*), an individual must opt-into the *FLSA Collective* and not opt-out of the *Rule 23 Class.*  Based on the individual's submission (or lack thereof) by the *Bar Date,* it shall be deemed the *Tipped Employee's* sole discretion whether they elect to receive only their *FLSA Collective Payment,* their *Class Payment,* or both.

(8)     Should an individual not wish to fully participate in the *Settlement*, they may elect to receive only their *Class Payment* or *FLSA Collective Payment*. In such circumstances, the payment not claimed will be redistributed to the individuals who are participating in that tranche with the unclaimed funds redistributed to individuals in the applicable tranche on a proportional basis. For example, if an individual elects not to receive their *FLSA Collective Payment* by not submitting a *Claim Form*, the monies allocated to their *FLSA Collective Payment* will be redistributed to members of the *FLSA Collective* on a proportional basis (*e.g.,* if there were unclaimed *FLSA Collective Payments* and an individual who did submit a *Claim Form* had damages that represented 1/1000 of the total funds claimed, they would be entitled to 1/1000 of the unclaimed *FLSA Collective Payments*).

(9)     Upon receipt of the *Notice Packet,* any *Tipped Employee* who wishes to challenge either (i) the calculation of his or her *Estimated Settlement Payment* or (ii) the required deductions set forth within *Defendants'* payroll records (*e.g.*, garnishments, tax liens, child support) must submit a written, signed declaration to the *Claims Administrator* for receipt by the *Claims Administrator* on or before the *Bar Date*. The *Claims Administrator* will resolve the challenge and make a final and binding determination without hearing or right of appeal.

(B) **Settlement Payment.** All *Settlement Class Members* will receive money in connection with this *Settlement*. Once the *Settlement* becomes *Final*, the *Claims Administrator* will calculate the *Settlement Payments* as follows:

(1) The *Claims Administrator* will deduct from the *Settlement Amount* the following amounts as awarded or permitted by the *Court*: (i) *Class Counsel's* attorneys' fees and expenses, (ii) the *Service Payment*, if any, to the *Plaintiffs*, and (iii) the fees and expenses of the *Claims Administrator*. The resulting number will be referred to as the "*Net Settlement Amount*."

(2) For each *Settlement Class Member*, the *Claims Administrator* will total the amount of tip credit taken by *Defendants* for all hours worked as a *Tipped Employee* during the *Class Period*. The *Claims Administrator* will then add the total amounts owed for all hours worked for each *Settlement Class Member* as a *Tipped Employee*. This number will be referred to as the "*Individual Recovery Amount*."

(3) The *Individual Recovery Amount* for all *Settlement Class Members* will then be added together by the *Claims Administrator* to determine the "*Settlement Class Members' Total Recovery Amount*."

(4) The *Net Settlement Amount* will be divided by the *Settlement Class Members' Total Recovery Amount*.

(5) The resulting fractional amount will then be multiplied by an *Individual Recovery Amount* to determine that *Settlement Class Member's "Gross Settlement Payment*."

(6) For *Settlement Class Members* who are *Rule 23 Class* **and** *FLSA Collective* members, the individual's *Settlement Payment* equals their *Gross Settlement Payment*. For those *Rule 23 Class* members who are also *FLSA Collective* members, the individual's *Settlement Payment* is equal to 70% of their *Gross Settlement Payment* ("*Class Payment*")*. For those *FLSA Collective* members who are **not** also *Rule 23 Class* members, the individual's *Settlement Payment* is equal to 30% of their *Gross Settlement Payment* ("*FLSA Collective Payment*")*.

(7) In such circumstances where individuals elected not receive 100% of their *Gross Settlement Payment*, the payment not claimed will be redistributed to the individuals who are participating in that tranche with the unclaimed funds redistributed to individuals in the applicable tranche on a proportional basis. For example, if an individual elects not to receive their *FLSA Collective Payment* by not submitting a *Claim Form*, the monies allocated to their *FLSA Collective Payment* will be redistributed to members of the *FLSA Collective* on a proportional basis (*e.g.,* if there were unclaimed *FLSA*

*Collective Payments* and an individual who did submit a *Claim Form* had damages that represented 1/1000 of the total funds claimed, they would be entitled to 1/1000 of the unclaimed *FLSA Collective Payments*).

(8)     The *Claims Administrator* shall use its best efforts to redistribute unclaimed funds on a proportionate basis outlined above.  However, to the extent necessary, it is permitted to use estimates and round amounts to the nearest penny provided such efforts are done for the entire tranche at issue.

(9)     To avoid a windfall to any individual *Settlement Class Member*, no *Settlement Class Member's* individual *Settlement Payment* will be higher than ten times that individual's *Estimated Settlement Payment*. Should any *Settlement Class Member's* settlement payment be higher than ten times his or her *Estimated Settlement Payment*, such amount will be reduced accordingly and with such reduction redistributed to the other *Settlement Class Members* on a proportionate basis. If all *Settlement Class Members* are subject to the above cap, then any reduction shall be subject to a *Court*-approved *Cy Pres Distribution*.

(C)     For purposes of performing the calculations set forth above, the *Claims Administrator* will rely on the hours recorded in *Defendants'* timekeeping system when determining the hours worked for *Tipped Employees,* except where an individual has contested the hours via the claims process contained in the *Claim Form* to the satisfaction of the *Claims Administrator*, in which case the *Claims Administrator* shall use the adjusted hours for that individual.

(D)     *Plaintiffs*, *Class Counsel*, *Defendants*, and *Defendants' Counsel* will have no responsibility for, or liability arising from, the *Claims Administrator's* calculations of the distribution of the *Settlement Amount* including, without limitation, the calculation of any *Settlement Payment*.

(E)     *Plaintiffs* are members of the *Rule 23 Class* and *FLSA Collective* by operation of this *Settlement Agreement*. *Plaintiffs' Settlement Payment* will be calculated in accordance with the formula set forth above.

(F)     Ten days before the *Final Approval Hearing*, the *Claims Administrator* will certify jointly to *Class Counsel* and *Defendants' Counsel* a list of all *Settlement Class Members*, indicating for each member whether they are a *Rule 23 Class* member, *FLSA Collective* member, or both, and the total *Settlement Payment* due to that individual pursuant to this *Settlement Agreement*. The *Claims Administrator* will also indicate whether any challenges to an *Estimated Settlement Payment* or required deduction has been received and, if so, the status of that challenge.

**4.10    Class Notice.**

(A)     The *Claims Administrator* will disseminate the *Class Notice* by the following means: mail and email. The *Claims Administrator* will mail the *Notice Packet* via

First Class Mail to each *Tipped Employee* within fourteen (14) calendar days after the *Class Administrator* receives the class list and the data required to perform the preliminary calculations. The *Claims Administrator* will (among other things) provide estimated settlement payment amounts in the *Class Notice*.

(1)    The mailed version of the *Class Notice* shall be substantially in the same form as Exhibit A. The outside of the envelope shall also include the following language "Court-Authorized Notice of Settlement of Class/Collective Action Lawsuit."

(2)    For any *Tipped Employee* where *Defendants* are able to provide an email address, the *Claims Administrator* shall send an email with the subject line reading "Court-Authorized Notice of Settlement of Class/Collective Action Lawsuit." The body of the email shall identify the *Claims Administrator* and include the following language: "Turning Point has identified you as a server, barista, and/or busser in Pennsylvania or New Jersey. If you have worked in one of these positions any time between May 19, 2017 and August 31, 2021, you may be entitled to receive part of a settlement claiming back pay for minimum wage. For additional information about the case (Case No.: 19-CV-1935 (E.D. Pa.)), including how to receive part of the settlement, please check your U.S. mail for a copy of the Notice. If you did not receive it, please contact the Notice Administrator at info@rg2claims.com. The Notice is also available via the link https://www.rg2claims.com/pdf/XXXXX.pdf. This Notice has been authorized by the United States District Court for the Eastern District of Pennsylvania."

(3)    To the extent feasible, both the *Class Notice* and the email to *Tipped Employees* detailed above shall include individualized passwords and links/website address to the website created by the *Claims Administrator* with a portal that will allow a *Tipped Employee* to fill out and submit their *Claim Form* online.

(B)    Before mailing, the *Claims Administrator* will attempt to confirm the accuracy of the addresses of each member of the *Tipped Employees* through the United States Post Office's National Change of Address ("NCOA") database. If a *Notice Packet* is returned as undeliverable, the *Claims Administrator* will perform one skip trace and resend by First Class United States Mail the *Court*-approved *Class Notice* once only to those *Tipped Employees* for whom it obtains more recent addresses.

(C)    Within three days after the *Claims Administrator* effectuates mailing of the *Notice Packet*, the *Claims Administrator* will also email any *Tipped Employee* for which *Defendants* provided that *Tipped Employee's* last known email address. The email shall also include a statement that the full *Notice Packet* has been mailed to the individual's last known address.

(D)    Fifteen (15) days before the *Bar Date*, the *Claims Administrator* shall mail a

16

reminder post card to any *Tipped Employee* who has not yet submitted a *Claim Form*.

(E)  The *Claims Administrator* will mail a *Court*-approved *Class Notice* to any *Tipped Employee* who contacts the *Claims Administrator* during the time period between the initial mailing of the *Class Notice* and the *Bar Date* and requests that a *Class Notice* be re-mailed. During the *Notice Period*, except as otherwise permitted by this *Settlement Agreement,* no other communications will be sent by either *Party* to *Tipped Employees*. *Class Counsel* may nevertheless communicate with *Plaintiffs* and respond to inquiries they receive from *Tipped Employees* during the *Notice Period* and otherwise communicate as permitted by this *Settlement Agreement*. *Defendants* may nevertheless communicate with its current employees in response to inquiries regarding any matter, excluding the *Action,* the *Settlement*, or this *Settlement Agreement*. For any inquiry regarding the *Action,* the *Settlement*, and/or the *Settlement Agreement*, *Defendants* shall advise that *Tipped Employee* to contact *Class Counsel.*

(F)  Upon mailing of the *Notice Packet*, the *Claims Administrator* shall establish a settlement website (or a link on their existing website) to assist in providing *Tipped Employees* with information regarding the *Settlement*. Such website may include (i) the *Amended Complaint*; (ii) the *Settlement Agreement*; (iii) a copy of the *Class Notice*; (iv) any orders entered by the *Court* regarding the *Settlement* subsequent to granting Preliminary Approval; and (v) a list of frequently asked questions and their corresponding answers that is mutually agreed upon by the *Parties*. Such website will be taken down within ten (10) days of the *Settlement Checks* being mailed.

(G)  The *Claims Administrator* will provide to *Defendants' Counsel* and *Class Counsel* at least once every two weeks during the *Notice Period*, a report concerning any objections raised by any *Tipped Employees*. Further, fourteen (14) days before the *Final Approval Hearing*, the *Claims Administrator* will provide *Defendants' Counsel* and *Class Counsel* with a cumulative report detailing any objections received from *Tipped Employees*.

(H)  At their own expense and within three business days of being notified that the *Claims Administrator* has effectuated mailing of the *Notice Packet*, the *Defendants* shall post in each of the *Restaurants* a copy of the *Class Notice* for a period of sixty (60) days. This posting will be in the same area where *Defendants* post other information to their *Tipped Employees*.

**4.11  Objections.** Only *Settlement Class Members* may object to the *Settlement*. To object to the *Settlement*, the individual must send a written objection to the *Claims Administrator* no later than the *Bar Date*. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. *Settlement Class Members* who wish to object and be represented by counsel will do so at their own expense. No *Settlement Class Member* will have any claim to any part of the *Settlement Amount* based, in whole or in part, on their retention of outside counsel. Should the *Claims Administrator* receive any

objection, it will promptly notify *Defendants' Counsel* and *Class Counsel,* and will provide each with the contact information for the objecting *Settlement Class Member.*

**4.12    Opt-Out/Request for Exclusion.**

(A)    For a *Tipped Employee* to exclude himself or herself from the *Settlement* or *Rule 23 Class* ("opt-out"), he or she must write and submit a *Request for Exclusion.* The *Parties* stipulate and agree that the following shall also constitute a valid *Request for Exclusion:* if a *Tipped Employee* writes the *Claims Administrator* a letter that states: "I request to be excluded from the Rule 23 Class in *Reynolds v. Turning Point Holding Company, LLC,* No. 19-01935 (E.D. Pa.). I affirm that I was employed by Defendants as a Tipped Employee on one or more days between May 19, 2017 through August 31, 2021." The individual who wishes to opt-out must also include his or her full name, address, and telephone number. *Tipped Employees* may not opt-out by telephone, fax, or email.

(B)    All *Requests for Exclusion* must be submitted by the *Bar Date.*

(C)    The date of submission is deemed to be the earlier of (i) the date the form is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark; or (ii) the date the form is received by the *Claims Administrator.*

(D)    Upon receipt of a *Request for Exclusion*, the *Claims Administrator* will notify *Class Counsel* and *Defendants' Counsel* and will provide *Class Counsel* with such individual's last known telephone number.

(E)    If a fully completed and properly executed *Request for Exclusion* is not received by the *Claims Administrator* from a *Rule 23 Class* member by the *Bar Date,* then that individual will be deemed to have forever waived his or her right to opt-out of the *Rule 23 Class.*

(F)    If a fully completed and properly executed *Claim Form* is not received by the *Claims Administrator* from a *Tipped Employee* by the *Bar Date,* then that individual will be deemed to have forever waived his or her right to opt-into the *FLSA Collective.*

(G)    If a *Tipped Employee* submits both a timely *Claim Form* and a timely *Request for Exclusion*, the *Claims Administrator* will promptly notify and send copies of the *Claim Form* and the *Request for Exclusion* to both *Class Counsel* and *Defendants' Counsel* and will provide *Class Counsel* with such individual's last known telephone number. *Class Counsel* may, in their sole discretion, contact that individual to ascertain their intent as well as to advise them of the impact submitting both forms will have on their *Settlement Payment.*

**4.13    Final Approval.**

(A)    *Plaintiffs* will file a motion seeking final approval of the *Settlement* ("*Final*

*Approval Motion*") with the *Court* in accordance with the Court's scheduling order. In the *Final Approval Motion*, *Plaintiffs* will request that the *Court* determine, at or after the *Final Approval Hearing* (a) whether to enter a *Final Approval Order*, substantially in the form attached as Exhibit C, (i) certifying the *PA Class*, *NJ Class*, and *FLSA Collective*; (ii) granting final approval of the *Settlement;* and (iii) dismissing the *Action* with prejudice and entering judgment pursuant to Federal Rule of Civil Procedure 54(b); (b) whether the distribution of the *Settlement Amount* set forth in this *Settlement Agreement* should be approved or modified; (c) the amount of legal fees and expenses to be awarded to *Class Counsel* as contemplated by Section 4.17 of this *Settlement Agreement*; and (d) the amount of *Service Payment*, if any, to be awarded to the *Plaintiffs*.

(B)     The *Final Approval Motion* will ask the *Court* to (a) approve this *Settlement Agreement*; (b) certify the *PA Class*, *NJ Class*, and *FLSA Collective*; and (c) approve and enforce the *Released Claims* as set forth in Section 5 of this *Settlement Agreement*.

(C)     At the *Final Approval Hearing*, *Plaintiffs* and *Defendants* will request that the *Court* rule on any Objections to the *Settlement* by any *Rule 23 Class* members and find that the *Settlement* is fair, reasonable and adequate, and enter the *Final Approval Order*.

(D)     The *Parties* agree to support entry of the *Final Approval Order*, including supporting the *Settlement* through any *Review Proceeding*. *Defendants* will not take any position with respect to *Class Counsel's* fee and expense request or *Plaintiffs' Service Payment*, so long as disposition of those matters is substantially in accordance with the provisions of this *Settlement Agreement*. The *Parties* otherwise covenant and agree to reasonably cooperate with one another and to take all actions reasonably necessary to effectuate the *Settlement Agreement* and to obtain a *Final Approval Order*.

(E)     Upon the *Final Effective Date*, *Plaintiffs* shall file a motion voluntarily dismissing the *Nulph Action* with prejudice. *Defendants* agree to work cooperatively in seeking said dismissal.

**4.14 Distribution of *Settlement Payments* to *Settlement Class Members*.**

(A)     No later than three (3) business days after the *Final Approval Order* becomes *Final*, *Defendants* will provide the *Claims Administrator* with the *Settlement Amount*.

(B)     Within fifteen (15) calendar days after receiving the *Settlement Amount*, the *Claims Administrator* will mail the *Settlement Payments* to the *Settlement Class Members*.

(C)     The *Parties* agree that each *Settlement Payment* will be issued to each *Settlement Class Member* as two separate payments: (i) fifty percent (50%) will be allocated to the claims asserted in the *Action* for alleged unpaid wages and other alleged

wage-related claims, and (ii) fifty percent (50%) will be allocated to the claims asserted in the *Action* for alleged liquidated damages, penalties, interest, and other relief. Each check sent to a *Settlement Class Member* will clearly identify whether it is a check for (i) wages or (ii) liquidated damages/other relief.

(1) The parts allocated to claims for alleged unpaid wages and other alleged wage-related damages will be subject to all required employee paid payroll taxes and deductions (e.g., federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other required deductions set forth within *Defendants'* payroll records (e.g., garnishments, tax liens, child support).

(2) The part allocated to alleged liquidated damages and other relief will be characterized as non-wage income to the recipient and shall not be subject to any withholdings. The *Claims Administrator* will report the wage parts to each *Settlement Class Member* on an IRS Form W-2 and the non-wage part on an IRS Form 1099.

(3) The *Claims Administrator* will be responsible for issuing the *Settlement Payments*, less required withholdings and deductions, to each *Settlement Class Member* and mailing the *Settlement Checks*, W-2s and 1099s to the *Settlement Class Members*.

(D) The back of each *Settlement Check* will state that "the check must be cashed within one-hundred eighty days (180) days or it will become void."

(1) If any *Settlement Check* is not cashed in the one-hundred eighty (180) day period, that *Settlement Check* will be voided, and the *Claims Administrator* will place a stop-payment on the check. *Settlement Class Members* with such voided checks will have irrevocably waived any right in or claim to a *Settlement Payment*, but the *Settlement Agreement* and all releases relating to their individual *Released Claims* will nevertheless be binding upon them. Any unclaimed funds resulting from such voided *Settlement Checks* shall be part of the *Cy Pres Distribution*.

(E) Neither *Defendants*, *Defendants' Counsel*, *Class Counsel*, *Plaintiffs*, nor the *Claims Administrator* will have any liability for lost or stolen checks, for forged signatures on checks, or for unauthorized negotiation of any checks funded by any portion of the *Settlement Amount*.

(F) Without limiting the foregoing, if a *Settlement Class Member* notifies the *Claims Administrator* that he or she believes that his or her *Settlement Check* has been lost or stolen, the *Claims Administrator* will immediately notify counsel for the *Parties* and stop payment on any such check.

(1) If the *Settlement Check* in question has not been negotiated before the stop payment order, the *Claims Administrator* will issue a replacement check,

from which the fees, if any, associated with the stop payment order will first be deducted. The *Settlement Class Member* will have an additional thirty (30) calendar days to negotiate the re-issued check from the date of re-mailing.

(2)   If any *Settlement Check* is not negotiated in that period of time, that *Settlement Check* will be voided. The funds from said *Settlement Check* will be considered part of the *Cy Pres Distribution*.

(G)   In addition to the *Settlement Amount*, *Defendants* will be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to *Defendants'* share of the FICA and FUTA taxes, with respect to the amounts treated as wages. The *Claims Administrator* will calculate the employer share of taxes and provide *Defendants* with the total employer tax contributions. *Defendants* will deposit with the *Claims Administrator* the calculated employer tax contributions before the mailing of the *Settlement Payments*.

(H)   Neither *Plaintiffs*, *Defendants*, *Class Counsel*, nor *Defendants' Counsel* has provided nor will provide any *Tipped Employees* with any advice regarding the tax consequences of this *Settlement Agreement*.

4.15   ***Cy Pres Distribution.*** If any portion of the *Settlement Amount* becomes, by operation of this *Settlement Agreement*, subject to a *Cy Pres Distribution*, the *Claims Administrator* shall distribute said funds to the recipient selected by the *Court* and set forth in the *Final Approval Order*. The *Parties* shall jointly propose three potential *cy pres* recipients from which the *Court* may, if it so chooses, select from. The *Parties* shall use their best efforts to agree upon organizations that provide, among other things, legal aide to low-income citizens of the State of New Jersey and/or the Commonwealth of Pennsylvania or support to restaurant-industry workers.

4.16   **Fees and Expenses Borne By *Defendants*.** In addition to the *Settlement Amount* and any other expenses enumerated in this *Settlement Agreement, Defendants* will bear sole responsibility for *Defendants' Counsel's* fees, expenses, and costs. Further, *Defendants* will bear sole responsibility for all fees and costs associated with dissemination of any notice required by *CAFA*. In addition, *Defendants* will bear sole responsibility for the payment of the employer's portion of payroll taxes regarding the part of the *Settlement Payments* attributable to wages. Further, should this *Settlement* not become *Final* for any reason, *Defendants* will bear all responsibility for any fees or expenses incurred by the *Claims Administrator*. Should this *Settlement* become *Final*, under no circumstances whatsoever shall any portion of the *Settlement Amount* revert to *Defendants*.

4.17   ***Class Counsel's* Fees and Costs.**

(A)   *Class Counsel* may make an application to the *Court* for an award of *Plaintiffs' Counsel's* fees in an amount not to exceed thirty-five percent (35%) of the *Settlement Amount*, plus reasonable expenses as awarded by the *Court*. Such application will be filed in connection with the *Parties' Final Approval Motion*.

21

(B)     If the *Court* rules that any amount requested by *Class Counsel* for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be *Class Counsel's* fees and costs for purposes of this *Settlement Agreement*.

(C)     Upon receipt of the *Settlement Amount,* the *Claims Administrator* will wire transfer the amount representing *Class Counsel's* attorneys' fees and expenses approved by the *Court* to *Class Counsel*.

(D)     Before any payment of any amount designated as *Class Counsel's* fees and costs, *Class Counsel* will provide the *Claims Administrator* with all information necessary to effectuate such payments (*e.g.,* a fully executed IRS Form W-9). *Class Counsel* will be issued an IRS Form 1099 for their award of *Class Counsel's* fees and costs. *Class Counsel* will be solely responsible for how the amount is to be allocated amongst the firms comprising *Plaintiffs' Counsel*, and *Defendants* will have no responsibility whatsoever for this allocation.

(E)     Payment of *Class Counsel's* fees and costs as set forth in this *Settlement Agreement* and the *Court's Final Approval Order* will constitute full and final satisfaction of any and all obligations by *Defendants* to pay any person, attorney or law firm (including but not limited to *Class Counsel*) for attorneys' fees, expenses or costs incurred on behalf of the *Plaintiffs, Rule 23 Class,* and the *FLSA Collective* and will relieve the *Released Persons* of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of the *Plaintiffs, Rule 23 Class,* and the *FLSA Collective* for this *Action. Defendants* will have no additional liability to *Plaintiffs' Counsel* for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs.

(F)     In the event the *Final Approval Order* does not become *Final* due to initiation of a *Review Proceeding*, *Class Counsel* may file a motion, which shall not be unreasonably opposed by *Defendants*, for payment of one-half of the award of attorneys' fees.

**4.18**   *Service Payment.*

(A)     *Class Counsel* may also make an application to the *Court* for a one-time *Service Payment* award to each of the *Plaintiffs*, in recognition of the work and services *Plaintiffs* contributed to the case including, but not limited to, meetings with *Plaintiffs' Counsel*, assumption of risks, serving as a class representative, and related activities (including, where applicable, responding to discovery, sitting for a deposition, and helping counsel prepare for the mediations). The *Service Payment* will not exceed five thousand dollars ($5,000.00) to each of the *Plaintiffs*. The final amount of each of the *Service Payments,* if any, will be determined by the *Court*.

(B)     The *Claims Administrator* will make the *Service Payment* to *Plaintiffs* in the

amount approved by the *Court* within the same time period for distributing *Settlement Payments*.

(C)     The *Service Payment* will be treated as non-wage income, and the *Claims Administrator* will issue a Form 1099 to *Plaintiffs* reflecting the value of the payment.

## 5.     RELEASE OF CLAIMS; ASSIGNMENT

**5.1     Release of Claims.**

(A)     Effective as of the *Final Effective Date*, the *Settlement Class Members* will be deemed to forever and fully release and discharge *Defendants*, and release and hold harmless the *Released Persons*, as follows (for each individual *Settlement Class Member*, their individual "*Released Claims*"):

(1)     *NJ Class* members release *Released Persons* from any and all New Jersey wage-related claims from May 19, 2017 through August 31, 2021, including but not limited to any claims pursuant to the NJWHL that such class member has, had, might have or might have had against any of the *Released Persons* that in any way related to any of the facts or claims that were alleged or that could have been alleged in the *Amended Complaint*, asserted in the *Actions*, by reason of the negotiations leading to this *Settlement*, or effectuation of this *Settlement*, even if presently unknown or un-asserted.

(2)     *PA Class* members release *Released Persons* from any and all Pennsylvania wage-related claims from May 19, 2017 through August 31, 2021, including but not limited to any claims pursuant to the PMWA and WPCL that such class member has, had, might have or might have had against any of the *Released Persons* that in any way related to any of the facts or claims that were alleged or that could have been alleged in the *Amended Complaint*, asserted in the *Actions*, by reason of the negotiations leading to this *Settlement*, or effectuation of this *Settlement*, even if presently unknown or un- asserted.

(3)     *FLSA Collective* members release *Released Persons* from any and all federal wage-related claims from May 19, 2017 through August 31, 2021, including but not limited to any claims pursuant to the FLSA that such individual has, had, might have or might have had against any of the *Released Persons* that in any way related to any of the facts or claims that were alleged or that could have been alleged in the *Amended Complaint*, asserted in the *Actions*, by reason of the negotiations leading to this *Settlement*, or effectuation of this *Settlement*, even if presently unknown or un-asserted.

(B) The *Settlement Class Members* further covenant and agree that, since they are settling disputed claim(s), they will not accept, recover or receive any back pay, liquidated damages, other damages, penalties, or any other form of relief based on any of their individual *Released Claims* asserted or settled in the *Action* which may arise out of, or in connection with any other individual, representative, class or any administrative remedies pursued by any individual(s) or any federal, state or local governmental agency against any of the *Released Persons* for any wage claim during the *Class Period*. *Settlement Class Members* further acknowledge and agree that they are precluded from pursuing any of their individual *Released Claims* they have, had, might have or might have had against any of the *Released Persons* based on any act or omission that occurred during the *Class Period*.

(C) The *Parties* acknowledge and agree that the releases and covenants set forth in Section 5.1 are only coextensive with the monetary relief provided. Thus, for example, if an individual is only a *FLSA Collective Member*, their release and covenants only apply to their FLSA claims.

**5.2** All members of the *Rule 23 Class* and the *FLSA Collective* will be bound by the terms and conditions of this *Settlement Agreement*, the *Final Approval Order*, the judgment, and the releases set forth herein.

(A) Any *Tipped Employee* who submits a timely and valid *Request for Exclusion* will not on behalf of themselves or the *Rule 23 Class* (i) be bound by any orders or judgments entered into this *Litigation* regarding the *Rule 23 Class*; (ii) be entitled to any benefits or relief provided or conferred to the *Rule 23 Class* under this *Settlement Agreement*; (iii) gain any rights provided or conferred to the *Rule 23 Class* by virtue of this *Settlement Agreement*; or (iv) be entitled to object to the *Settlement* or appeal any order of this *Court* as they pertain to the *Rule 23 Class*.

(B) Any *Tipped Employee* who fails to submit a timely and valid *Consent Form* will not on behalf of themselves or the *FLSA Collective* (i) be bound by any orders or judgments entered into this *Litigation* regarding the *FLSA Collective*; (ii) be entitled to any benefits or relief provided or conferred to the *FLSA Collective* under this *Settlement Agreement*; (iii) gain any rights provided or conferred to the *FLSA Collective* by virtue of this *Settlement Agreement*; or (iv) be entitled to object to the *Settlement* or appeal any order of this *Court* as they pertain to the *FLSA Collective*.

**5.3** ***Defendants'* Releases.** Upon the *Final Effective Date*, *Defendants* will conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge *Plaintiffs* and *Class Counsel* from any and all claims, counterclaims, crossclaims, complaints, charges, demands, actions, causes of action, judgments, debts, expenses, losses, liabilities, and obligations, including attorneys' fees, expenses and costs, arising from or related to the prosecution and/or resolution of the *Actions*.

**5.4** **Scope of Releases.** The release and discharge set forth in Section 5 will not include the

release or discharge of any rights or duties of the *Parties* arising out of this *Settlement Agreement*, including the express warranties and covenants contained herein.

5.5 **No Assignment.** *Plaintiffs* and *Defendants* represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any part thereof or interest therein, including, but not limited to, any interest in the *Action*, or any related action.

## 6. NON-ADMISSION OF LIABILITY.

6.1 By entering into this *Settlement Agreement*, *Defendants* in no way admit any violation of law or any liability whatsoever.

6.2 Likewise, by entering into this *Settlement Agreement*, *Defendants* in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Settlement of the *Actions*, negotiation and execution of this *Settlement Agreement*, and all acts performed or documents executed pursuant to or in furtherance of this *Settlement Agreement* or the *Settlement* (a) are not evidence of any wrongdoing or liability on the part of *Defendants* or of the truth of any of the factual allegations in the *Amended Complaint*; (b) are not an admission or evidence of fault or omission on the part of *Defendants* in any civil, criminal, administrative or arbitral proceeding; and (c) are not an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this *Settlement Agreement*.

## 7. TERMINATION.

7.1 **Grounds for *Settlement Agreement* Termination.** Any *Party* may terminate the *Settlement Agreement* if the *Court* declines to enter the *Final Approval Order* or judgment substantially in the form submitted by the *Parties*, or if a Court of Appeals reverses the entry of a *Final Approval Order* or judgment. Additionally, the following events are also grounds for termination:

(A) Either *Party* may terminate this *Settlement Agreement* should an adjustment to the *Settlement Amount* be necessary pursuant to Section 4.6 and no adjustment is made within five business days of the *Claims Administrator* advising *Class Counsel* and *Defendants' Counsel* of the need for said adjustment.

(B) *Plaintiffs* may terminate this *Settlement Agreement* should *Defendants* file for bankruptcy prior to the *Final Effective Date.*

(C) In the event that *Defendants* declare bankruptcy prior to disbursement of the *Settlement Amount* and any bankruptcy trustee seizes any portion of the *Settlement Amount*, any releases granted by the *Releasing Parties* shall be void irrespective of whether *Plaintiffs* has exercised their right to terminate.

(D)   *Defendants* may terminate this *Settlement Agreement* if more than ten percent (10%) of the *NJ Class* and/or *PA Class Members* opt-out of this *Settlement* by filing timely *Requests for Exclusion*.

**7.2   Procedures for Termination.** To terminate this *Settlement Agreement* as specified above, the terminating *Party* will give written notice to the other *Party* no later than fourteen (14) calendar days after the terminating *Party* learns that the applicable ground for termination has been satisfied.

**7.3   Effect of Termination.**

(A)   Should this *Settlement Agreement* be terminated pursuant to Section 7, this *Settlement Agreement* will not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class or collective is certifiable, or in any other matter by any *Party*. Neither the *Settlement Agreement*, any motions filed, settlement proposals exchanged by the *Parties*, nor Orders entered pursuant to the *Settlement Agreement*, will constitute an admission, finding or evidence that any requirement for representative litigation or certification as a class or collective action has been satisfied in this *Action* or any other action, except for the limited settlement purposes pursuant to the terms of the *Settlement Agreement*.  Further, should this *Settlement Agreement* be terminated pursuant to Section 7, the *Amended Complaint* filed in the *Reynolds Action*, to which the *Parties* have stipulated solely for the purpose of the settlement of the *Actions*, shall be null and void. Further, the *Amended Complaint* shall be deemed to be withdrawn, and each *Action* shall revert to their status as they existed prior to the date of this *Settlement Agreement*. Thereafter, the *Parties* shall work cooperatively to obtain a new schedule in the *Reynolds Action* and the *Nulph Action*, and the *Barba Action* shall be promptly filed.

(B)   If this *Settlement Agreement* is canceled, rescinded, terminated, voided, or nullified, or the settlement of the *Action* is barred by operation of law, is invalidated, is not approved or otherwise is ordered not to be carried out by any *Court*:

(1)   the *Settlement Agreement* will have no force or effect, and no *Party* will be bound by any of its terms with respect to the terminating *Parties*;

(2)   *Defendants* will have no obligation to make any payments to *Plaintiffs*, any *Rule 23 Class* or *FLSA Collective* member, or *Class Counsel*, except that *Defendants* will be responsible for paying the *Claims Administrator* for services rendered up to the date the *Claims Administrator* is notified that the *Settlement* has been terminated; and

(3)   any settlement class or collective certified by the *Court* in conjunction with approving this *Settlement Agreement* will be deemed decertified should the *Settlement Agreement* be terminated and *Defendants* will retain the right to challenge the certification of any class proposed by *Plaintiffs*.

8.    **MISCELLANEOUS.**

8.1    *Parties'* **Authority**

    (A)    The signatories hereby represent that they are fully authorized to enter into this *Settlement Agreement* and bind the *Parties* hereto to the terms and conditions hereof.

    (B)    The entity or individual signing this *Settlement Agreement* on behalf of *Defendants* represents and warrants that they have authority to sign on behalf of all *Defendants* and, accordingly bind all *Defendants* to this *Settlement Agreement*.

    (C)    The *Class Notice* will advise all *Tipped Employees* of the binding nature of the release, and that the release will have the same force and effect upon each *Settlement Class Member* as if the *Settlement Agreement* were executed by each *Settlement Class Member*.

8.2    **Advice of Counsel.** In entering into this *Settlement Agreement*, each *Party* represents and warrants that it has relied upon the advice of its attorneys, that it has completely read the terms of this *Settlement Agreement*, and that the terms of this *Settlement* have been explained to it by its attorneys. Each *Party* further represents and warrants that it fully understands and voluntarily accepts the terms of the *Settlement*.

8.3    **Admissibility.** This *Settlement Agreement* will be inadmissible as evidence in any proceeding, except as necessary to approve, interpret, or enforce this *Settlement Agreement*.

8.4    **Severability.** If any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any part of this *Settlement Agreement* is not enforceable, the *Parties* may (but will not be required to) jointly agree in writing to modify this *Settlement Agreement* to conform with such determination.

8.5    **Notices.** Any notice, demand or other communication under this *Settlement Agreement* (other than the *Class Notice* or other notices given at the direction of the *Court*) will be in writing and will be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid) or delivered by reputable express overnight courier, with a copy by email.

    IF TO *PLAINTIFFS* OR THE *SETTLEMENT CLASS MEMBERS*:

    CONNOLLY WELLS & GRAY, LLP
    Gerald D. Wells, III
    Email: gwells@cwglaw.com
    101 Lindenwood Drive, Suite 225

Malvern, PA 19355
Telephone: (610) 822-3702

IF TO *DEFENDANTS*:

COZEN O'CONNOR
Paul K. Leary, Jr.
Email: pleary@cozen.com
One Liberty Place
1650 Market Street Suite 2800
Philadelphia, PA 19103
Telephone: 215-665-6911

**8.6**    **Cooperation between the *Parties*; Further Acts.** The *Parties* will cooperate fully with each other and will use their best efforts to obtain the *Court's* approval of this *Settlement Agreement* and all of its terms. Each of the *Parties*, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this *Settlement Agreement*.

**8.7**    **Entire Agreement.** This *Settlement Agreement* constitutes the entire agreement between the *Parties* with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the *Parties* will be deemed merged into this *Settlement Agreement*.

**8.8**    **Binding Effect.** This *Settlement Agreement* will be binding upon the *Parties* and, with respect to *Settlement Class Members*, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**8.9**    **Arm's Length Transaction; Materiality of Terms.** The *Parties* have negotiated all the terms and conditions of this *Settlement Agreement* at arm's length. All terms and conditions of this *Settlement Agreement* in the exact form set forth in this *Settlement Agreement* are material to this *Settlement Agreement* and have been relied upon by the *Parties* in entering into this *Settlement Agreement*.

**8.10**   **Captions.** The captions or headings of the sections and paragraphs of this *Settlement Agreement* have been inserted for convenience of reference only and will have no effect upon the construction or interpretation of any part of this *Settlement Agreement*.

**8.11**   **Construction.** The determination of the terms and conditions of this *Settlement Agreement* has been by mutual agreement of the *Parties*. Each party participated jointly in the drafting of this *Settlement Agreement*, and therefore the terms and conditions of this *Settlement Agreement* are not intended to be, and will not be, construed against any party by virtue of draftsmanship.

**8.12**   **Governing Law.** This *Settlement Agreement* will in all respects be interpreted, enforced and governed by and under the laws of the Commonwealth of Pennsylvania, without regard

to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law will govern.

8.13    **Continuing Jurisdiction.** The *Court* will retain jurisdiction over the interpretation and implementation of this *Settlement Agreement* as well as any and all matters arising out of, or related to, the interpretation or implementation of this *Settlement Agreement* and of the settlement contemplated thereby. The *Court* will not have jurisdiction to modify the material terms of the *Settlement Agreement* or to increase *Defendants'* payment obligations hereunder without the *Parties'* agreement.

8.14    **Waivers, Modifications, Amendments to be in Writing.** No waiver, modification or amendment of the terms of this *Settlement Agreement*, whether purportedly made before or after the *Court's* approval of this *Settlement Agreement*, will be valid or binding unless in writing, signed by or on behalf of all *Parties* and then only to the extent set forth in such written waiver, modification or amendment, subject to any required *Court* approval. Any failure by any *Party* to insist upon the strict performance by the other party of any of the provisions of this *Settlement Agreement* will not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this *Settlement Agreement*, and such party, notwithstanding such failure, will have the right thereafter to insist upon the specific performance of any and all of the provisions of this *Settlement Agreement*.

8.15    **When Agreement Becomes Effective; Counterparts.** This *Settlement Agreement* will become effective upon its execution. The *Parties* may execute this *Settlement Agreement* in counterparts, and execution in counterparts will have the same force and effect as if *Plaintiffs* and *Defendants* had signed the same instrument.

8.16    **Non-publication.** *Plaintiffs* agree that they will not publicize the negotiations with respect to the *Settlement Agreement.* Nothing in this *Settlement Agreement* shall prohibit *Plaintiffs* from disclosing information concerning payments made to them to members of their immediate family and tax advisors. Further, nothing in this *Settlement Agreement* will prohibit or restrict such disclosure as is required by law or as may be necessary for the prosecution of claims relating to the performance or enforcement of this *Settlement Agreement,* or prohibit or restrict *Plaintiffs* from responding to any inquiry about this *Settlement* or its underlying facts and circumstances from any governmental agency.

8.17    **Press Releases.** Neither *Party* will issue any statements to the press, notify the press of the settlement, or otherwise seek to publicize the fact or details of the *Settlement* in any way outside of the Court-approved *Settlement* notification process. To the extent either party wishes to respond to a press inquiry, that party shall present to the other party a proposed statement, which shall not be issued unless approved by the other party.

**[Remainder of Page Intentionally Left Blank]**

29

DATED:_____          FOR DEFENDANTS

                                 By:_____

                                 Printed Name:_____

                                 Title:_____


DATED: 7/29/2022                 _____
                                 Christina Mary Reynolds


DATED:_____          _____
                                 Christina Nulph


DATED:_____          _____
                                 Rosemary Barba


30

DATED:_____

FOR DEFENDANTS

By:_____

Printed Name:_____

Title:_____

DATED:_____

_____
Christina Mary Reynolds

DATED: **7/29/2022**

DocuSigned by:

Christina Nulph

E8322E4A7A454BF...

Christina Nulph

DATED:_____

_____
Rosemary Barba

30